ARTHUR H. PATTERSON v. EDMON ADAN.[1]

November 8, 1912.

Nos. 17,866—(58).

**Garnishment — liability of insurer after judgment.**

     Where, under a policy insuring against loss by reason of the operation of the assured's automobile, an action is brought by a person injured by such automobile against the assured, and the insurance company thereupon takes sole charge of the defense, to the exclusion of the assured, as it had the right to do under the policy, a judgment in the action against the assured becomes, as between plaintiff, defendant, and the company, a liability or debt owing unconditionally by the company to the assured, which such plaintiff may reach by garnishment.

**Same — policy construed.**

     A provision in the policy that no action shall lie against the company, "unless it shall be brought by the assured for loss or expense actually sustained and paid in money by him after trial of the issue," applies only in case the company denies liability and refuses to defend.

After the order in the district court for Ramsey county denying a new trial of the action, defendant appealed from that order to this court but gave no supersedeas bond. Thereafter judgment was entered in the district court, and an execution was issued against him and returned unsatisfied, he having departed from the state. The Philadelphia Casualty Company, a corporation which had issued to defendant an automobile policy of indemnity against loss as defined in the policy, had defended the action but refused to pay the judg-

---

1 Reported in 138 N. W. 281.

ment. Garnishee process was then issued against it and its disclosure taken and returned to the court. Plaintiff moved for judgment, the motion was denied and the garnishee discharged, Kelly, J. From that order, plaintiff appealed to this court. Reversed and cause remanded for further proceedings.

*C. D. & R. D. O'Brien,* for appellant.

*Harris Richardson* and *Walter Richardson,* for respondent.

HOLT, J.

Plaintiff recovered a verdict against the defendant in the sum of $4,500 for an injury received through the negligence of defendant, causing his automobile, in which plaintiff was riding, to overturn. Judgment was entered on the verdict, and defendant appealed to this court, but gave no supersedeas bond. Pending the appeal, the respondent was duly garnisheed and, upon the disclosure had, plaintiff moved for judgment. The motion was denied, and the garnishee discharged.

From the disclosure it also appears that, when the accident occurred which caused the injury for which plaintiff recovered the judgment, the defendant held a so-called insurance policy issued by the garnishee, hereinafter and in the policy called the company, covering risks resulting from accidents in the use of the automobile in question. In consideration of the premium the company "agrees to indemnify the assured against loss," as therein defined, subject to the special and general agreements therein contained, which are to be construed as co-ordinate conditions. The other terms of the policy deemed material to the question now presented for decision are these:

"The company agrees to indemnify the assured:

"I. Against loss by reason of the liability imposed by law upon the assured for damages on account of bodily injuries, or death accidentally suffered by any person or persons, by reason of the maintenance, or use, within the limits of the United States of America or Canada," of the assured's automobile.

"II. Agrees to serve the assured, upon notice of such injuries or

death, by such investigation thereof, or by such negotiations or settlement of any resulting claims as may be deemed expedient by the company."

"III. Agrees to defend, in the name and on behalf of the assured, any suits which may at any time be brought against him on account of such injuries or death, including suits alleging such injuries and demanding damages therefor, although such suits, allegations, or demands, are wholly groundless, false, or fraudulent, and covered by this policy."

"IV. Agrees to provide" the necessary appeal bonds.

"V. .Agrees to pay all costs taxed against the assured in any legal proceeding defended by the company, all interest accruing after entry of judgment upon such part thereof as shall not be in excess of the limits of the company's liability as hereinafter expressed, and all expenses incurred by the company for investigation, negotiation or defense."

This insurance is subject to the following

## SPECIAL AGREEMENTS:

"1. The company's liability for loss on account of an accident resulting in injuries to or in the death of one person is limited to five thousand ($5,000) dollars, and subject to the same limit for each person."

Then follow general and special provisions covering loss from destruction of the property of others through the use of the automobile, substantially of the tenor above quoted, and also general and special provisions covering loss or damage to the automobile. Then follow these general agreements relating to all the risks:

## GENERAL AGREEMENTS:

"1. The assured, upon the occurrence of an accident, shall give immediate written notice thereof. * * * The assured shall, at all times, render to the company all co-operation and assistance in his power.

"2. If thereafter any suit is brought against the assured to enforce

a claim for damages on account of an accident covered by this policy, the assured shall immediately forward to the company every summons or other process served on him, and the company will at its own cost defend against such suit, even if groundless, in the name and on behalf of the assured.

"3. The assured shall not voluntarily assume any liability or settle any claim, except at his own cost, nor incur any expense, nor interfere in any negotiations for settlement or in any legal proceedings without the consent of the company previously given in writing. * * *

"4. No action shall lie against the company to recover for any loss or expense under this policy, unless it shall be brought by the assured for loss or expense actually sustained and paid in money by him after trial of the issue."

The disclosure shows that as soon as the action was begun the company took sole charge of the defense. At the trial plaintiff recovered a verdict of $5,000, the company in behalf of defendant duly appealed to this court from an order denying a new trial, the order was reversed, and upon a new trial the verdict first above mentioned was obtained. The company carried on all the steps in the litigation, including the present appeal in the main action; but upon advice of counsel no supersedeas bond was given, because the assured defendant was then thought to be insolvent, although the company since learned that he thereafter left the state with several thousand dollars in his possession. It was also disclosed that the practice of the company, when it undertook to defend in behalf of the assured, was to pay the final judgment without waiting for the assured to pay it, first, however, ascertaining that the assured was absolutely able to respond to the full amount thereof.

Upon the record did it appear that the company, the garnishee, was indebted to the defendant when the disclosure was had? It may be conceded that the company intended so to frame the policy that not every avenue of escape from payment in case of a loss should be closed. The main purpose of its business is to obtain and retain the premiums. The object of the assured is to get protection. The ob-

ject and purpose of the contracting parties is not to be lost sight of in construing a contract, nor is the rule that in case of ambiguity it must be resolved against the one who prepared the instrument. The language in the lengthy document before us was not the choice of the assured. Recognition needs be taken of the enormous growth of liability insurance of late years. The hazards of modern industries and the risks connected with some of the advantages of present-day life call for this kind of insurance. Policies attempting to fill this demand should, if possible, be construed so as not to be a delusion to those who have bought them. In soliciting business, is it supposable that the company would inform the assured that it assumed no risk if the assured, after accepting the policy, becomes so financially embarrassed that no judgment could be enforced against him? Insurance companies of this kind do not, at least openly, ask for the patronage of the insolvent. They profess to give the needed protection to all. Those who procure this kind of insurance have not only their own protection in mind, but also the idea that, if through their involuntary negligence a servant or other person sustains injury, such an one may be recompensed.

But, even granting that this policy is so worded that on its face it must be considered one of indemnity alone, we think that under it the company may, and in this case did, place itself in a position which has resulted in liability to the assured. If suit is brought on a claim intended to be covered by this policy, the company, after notice, agreed to defend; but, not only that, it reserved to itself the exclusive right to settle or carry on the litigation, excluding the assured from any interference therewith. On these provisions the company acted, assumed the defense, and has carried on the litigation to the bitter end, even after defendant left this jurisdiction. The assured retained no voice or interest in the litigation. The company substituted its interests and its judgment for that of the assured in the action. By so doing it assumed a relation to this plaintiff, and to every plaintiff where under its policy it steps into a suit, which must be considered in construing the contract. Neither public policy nor legal principles can be invoked against the validity of these provisions, if they mean no more than an undertaking to contest an

asserted claim against the assured, for which it is liable when established; but if, under the pretense of an insurance obligation, the company carried on litigation in the name of one who has neither voice nor interest therein, and which does not affect the company itself, because the assured is unable or unwilling to pay if plaintiff is awarded judgment, it would seem the company becomes an officious intermeddler. Public policy does not permit a litigant to so surrender control of his lawsuit to one who has no interest in the cause of action. A contract between client and attorney, although the attorney has a lien for his fees on the cause of action, is void, if the client is excluded from control of the cause of action.

The policy here should be so interpreted, if possible, that its provisions do not run contrary to law, and that result is reached by holding that the undertaking to defend means something more than carrying on litigation in court. By undertaking the defense the company elected to treat plaintiff's cause of action, if he had any, as covered by its contract; and when it substituted itself and its judgment for that of the defendant, both plaintiff and defendant have a right to insist that the final judgment establishes the liability and debt of the company to the assured. The undertaking to defend is of no value, and may be of great danger, to the assured, where he thus abandons all control of the suit to the company, if it does not mean that whatever liability is established shall be discharged. The company admits that where the assured is perfectly solvent the practice of the company is to carry the defense to a successful issue by paying the judgment without stopping for the assured to pay it. It is even more important to an assured who is in financial stress that no judgment be allowed to stand unsatisfied against him than it is to one who has abundant means to satisfy it. Contractors and manufacturers of limited means, as well as persons of small means, or no means at all, who operate an automobile, carry the class of insurance here in question because accidents resulting in large judgments would mean financial ruin to them. Suppose after the company so insuring should insist on its right to take the exclusive charge of the defense of an action arising out of a risk covered by the policy, nevertheless a large judgment results against the

assured, which, because of temporary embarrassment, he cannot pay; was it intended by the terms of the contract that such occurrence should relieve the company, force the assured to the wall, and leave the plaintiff in the action, whom the insurance was no doubt indirectly intended to benefit, wholly in the cold? We do not think this is a fair intention of this policy in a case where the company, under the terms thereof, substitutes itself for the assured in contesting a cause of action, and we do not so construe it.

The provision most strongly relied on by the company to show that this is indemnity and not liability insurance is this, found in the general provisions covering all the risks:

"No action shall lie against the company to recover for any loss or expense under this policy, unless it shall be brought by the assured for loss or expense actually sustained and paid in money by him after trial of the issue."

This manifestly is not a condition precedent to liability in every instance; for then, in case of loss or damage to the automobile, also covered by this policy, if the company does not voluntarily pay the loss, no action could lie. The company also expressly agrees to pay the costs taxed in the action and the interest on the judgment. Nevertheless a strict reading of the provision would make it incumbent on the assured to first pay these items expressly agreed to be paid by the company before there was a legal liability against it. We think a proper construction of the provision is that no suit will lie against the company, in cases where the company declined to take the defense, unless the assured actually litigated and paid the claim. In such a case there is no interference on the part of the company with the rights of either a plaintiff or the assured in the litigation, and, not having elected to treat the cause of action as a risk covered by the policy, it may properly stipulate that, before the assured shall maintain a suit against it, the claim must have been tried, established and paid.

We therefore hold that, in a policy such as this, where the company has come into the litigation and assumed exclusive control

thereof under its contract, it recognizes a liability, if it fails to defend successfully, to pay the assured the amount of the judgment it so permits to be established, not exceeding the sum stipulated in the policy, and also that, as to the plaintiff, it should be considered that such judgment is a debt due the assured from the company, and not dependent on any contingency. Payment of the judgment, so far as the rights of the company are concerned, in such case, is a mere pro forma matter, and not a condition precedent to its liability to defendant under plaintiff's garnishee proceeding.

We know this conclusion is not in accord with perhaps the weight of authority; but, in the cases cited to sustain the opposite of the rule we adopt, it is not clear that the company took exclusive, or any, charge of the litigation, and therefore, in our opinion, sufficient consideration is not given to this feature of the contract. Connolly v. Bolster, 187 Mass. 266, 72 N. E. 981; Finley v. U. S. Casualty Co. 113 Tenn. 592, 83 S. W. 2, 3 An. Cas. 962; Stenbom v. Brown-Corliss Engine Co. 137 Wis. 564, 119 N. W. 308, 20 L.R.A.(N.S.) 956; Cushman v. Carbondale, 122 Iowa, 656, 98 N. W. 509; Allen v. Ætna Life Ins. Co. 145 Fed. 881, 76 C. C. A. 265, 7 L.R.A. (N.S.) 958; Maryland Casualty Co. v. Omaha Electric Light & Power Co. 157 Fed. 514, 85 C. C. A. 106; Travelers v. Moses, 63 N. J. Eq. 260, 49 Atl. 720, 92 Am. St. 663; Frye v. Bath, 97 Me. 241, 54 Atl. 395, 59 L.R.A. 444, 94 Am. St. 500.

But we are inclined to follow the rule adopted in New Hampshire, and expressed in a very able opinion by Chief Justice Parsons in Sanders v. Frankfort, 72 N. H. 485, 57 Atl. 655, 101 Am. St. Rep. 688, wherein he says: "The view that the contract means that the insurance company, after taking control of the proceedings in a suit against the assured, cannot thereafter be discharged, except by payment of the indemnity to the assured or securing his discharge from the claim, is thought to best conform to the intent of the parties, and is adopted." This seems a just and fair view, considering the terms of the contract, its purpose, and the position assumed by the parties thereunder; and we think it in line with the principles applied in Anoka Lumber Co. v. Fidelity & Casualty Co. 63 Minn. 286, 65 N. W. 353, 30 L.R.A. 689. The assumption that a similar policy

was an indemnity and not a liability contract in Kennedy v. Fidelity & Casualty Co. 100 Minn. 1, 110 N. W. 97, 9 L.R.A.(N.S.) 478, 117 Am. St. 658, 10 An. Cas. 673, was not necessary for the determination of that case, and therefore not a precedent here.

The order is reversed, and cause remanded for further proceedings in harmony herewith.