## Richmond.

# Helen S. Combs v. Arthur Hunt, and Georgia Casualty Co., Garnishee.

### December 18, 1924.

1. Attachment and Garnishment—*Indemnity Insurance—Liability of Company—Case at Bar.*—Defendant company insured the automobile of one H. against injury and H. against loss from claims arising against him from the operation of the machine.

    *Held:* That in order to hold the defendant company liable in garnishment proceedings by one injured by H.'s machine it must be shown that there was a present fixed liability upon it to pay the assured for the loss insured against. If the evidence established the fact that the judgment debtor had no right to demand payment of the casualty company under the terms of the policy, then the trial court properly held that there was no liability on the garnishee.

2. Insurance—*Construction of Policy—Favorable to Assured—Plain Meaning Must be Given Effect.*—In considering an insurance contract, and in seeking to ascertain the intent of the parties, the court will take cognizance of the fact that the policy is prepared by the insurance company and is apt to contain stipulations and conditions, at times complicated and of doubtful meaning, placed in the contract for the protection of the company, and therefore the court will in cases of ambiguity lean to a construction most favorable to the assured; still, primarily an insurance contract, like other contracts, must be construed in accordance with its terms; its plain meaning must be given effect; courts cannot make contracts for parties.

3. Insurance and Construction—*All Parts Read Together.*—All portions of the policy must be considered in its construction.

4. Indemnity Insurance—*Insurance against Loss or Liability—Unsatisfied Judgment against Insured—Liability of Company in Garnishment Proceedings by Injured Party—Case at Bar.*—The instant case was a garnishment proceeding against a casualty company by one injured by the automobile of insured. Judgment had been obtained by the party injured against the assured and an execution returned "no effects." An alias execution was issued, and under this execution, upon suggestion of liability under §6509 of the Code of 1919, a process of garnishment was served on defendant. The policy of insurance

contained the usual "no action clause," providing that no action should be brought against the company except for loss that assured had actually sustained by payment in money of a final judgment rendered against assured in a suit for damages. Defendant company had defended the action against assured by the party injured.

*Held:* That the injured party could not recover against the company as garnishee.

5. Indemnity Insurance—*No Action Clause—Condition Precedent.*—According to this great current of authority it has been uniformly held that the only contracting parties to an indemnity contract are the assured and the indemnity company; that the injured party is in no sense privy to the contract; that the terms of the policy are clear and unambiguous; that the loss for which the company agrees to indemnify the assured is plainly stated; that payment of the judgment by the assured is a condition precedent to any claim on his part against the insuring company; that the circumstance that the company assumes the defense of the damage suit does not alter the terms of its liability; and that the parties having so contracted with each other the courts cannot change the terms of the contract between them.

6. Indemnity Insurance—*Refusal of Company to Defend Suit against Assured —Breach of Contract by Company.*—It would certainly seem logical and more in consonance with the true intent of the stipulations of the policy to hold that a refusal on the part of the company to defend a suit against the assured constitutes a breach of its contract and makes it liable to the assured for the damages he may suffer, whether such damages be measured by a judgment against him or a voluntary settlement which the assured is forced to make.

7. Indemnity Insurance—*"No Action Clause"—Relief by Courts.*—The "no action clause" usually contained in indemnity policies is harsh and but very imperfectly relieves the average automobile owner from the embarrassment caused by a claim and suit for damages against him. But the court cannot read into the written instrument any stipulation it does not contain, or can we give it a construction plainly in conflict with its expressed purport.

8. Indemnity Insurance—*No Action Clause—Relief by Legislature.*—"The General Assembly of Virginia, at its recent session, enacted a statute. requiring the company to insert in its policy a provision allowing the injured person to maintain an action against the company when an execution has been returned unsatisfied because of insolvency or bankruptcy of the judgment debtor. Acts of 1924, page 504."

9. Indemnity Insurance—*Payment of Judgment—Impounding and Sale of Assured's Automobile—Garnishment—Settlement between Assured and Company—Lien of Execution—Case at Bar.*—In garnishment proceedings against an indemnity company by a party injured by assured's automobile, it appeared that assured's machine was impounded and sold and the net proceeds applied in satisfaction of the judgment against him obtained by the party injured.

Statement.

*Held:* That this amount was due to the judgment debtor by the gar-
nishee and would be subject to the garnishment proceedings if a lien
was acquired upon it under either of the executions upon the judgment
of the party injured, before the assured released the company from all
liability. But in the instant case there was no lien acquired during
the life of the first execution because the liability did not become
fixed until after its return and the second execution was not issued
until after settlement between assured and the company, and there
was no evidence that this settlement was collusive.

10. INDEMNITY INSURANCE—*Settlement between Assured and Company—Lia-
bility of Company to Party Injured—Executions—Case at Bar.*—In the
instant case, garnishment proceedings against an indemnity company
by a party injured by the automobile of assured, the company at no
time denied liability for the collision damage to assured's car.
There was, therefore, during the life of an execution issued upon a
judgment against assured in favor of the party injured, a lien on this
liability, and the company was liable to the execution creditor if it
subsequently, with notice of the execution lien, settled with assured
for the damage to his car.

11. EXECUTIONS—*Notice of Execution Lien—§6501, Code of 1919.*—The notice
under §6501 of Code 1919 need not be in any particular form nor even
in writing.

12. EXECUTIONS—*Execution Lien—Notice of Lien Question for Jury—Demurrer
to the Evidence—Case at Bar.*—Whether or not an indemnity company
should be held to have had notice of an outstanding execution against
assured before its settlement with him was a question of fact for the
jury to determine. The case having been withdrawn from the jury by
the demurrer to the evidence, and the evidence being clearly in con-
flict on this point, or sufficient to allow the jury to find either way, the
court must hold, upon well settled principles applicable to the con-
sideration of a case upon demurrer to the evidence, that the company
must be regarded as having notice of the existence of the execution.

Error to a judgment of the Court of Law and Chan-
cery of the city of Norfolk, in garnishment proceedings.
Judgment for garnishee.  Plaintiff assigns error.

*Reversed and rendered.*

The opinion states the case.

*Page, Page & Page,* for the plaintiff in error.

*Garnett, Taylor & Edwards*, for the defendants in error.

CRUMP, P., delivered the opinion of the court.

[1] In this case, Helen S. Combs, the plaintiff in error, on the 17th day of December, 1921, recovered a judgment against Arthur Hunt for $6,214.00 in her action against Hunt for injuries sustained by her, as the result of a collision of an automobile in which she was riding, caused by the negligent operation of Hunt's automobile. An execution issued on this judgment December 19, 1921, and was returned no effects at the first February Rules, 1922. On the 17th day of March, 1922, an alias execution was issued returnable to the first Monday in June following. Under this latter execution, and by reason of a suggestion of liability made by the plaintiff under section 6509 of the Code of Virginia, a process of garnishment was served on the Georgia Casualty Company as garnishee, which secured to the plaintiff the benefit of her execution lien upon intangible personal property, under section 6501 of the Code, although incapable of being levied on. The garnishee answered the summons in writing, which was rejected by the trial court as an insufficient disclosure, and thereupon the jury was sworn to try the issue arising as to whether there was a debt due by the garnishee to the judgment debtor which was subject to the lien of the execution. Upon this trial the defendant garnishee demurred to the evidence, and the jury ascertained the amount to be $5,732.00, subject to the ruling of the court on the demurrer. Subsequently the court sustained the garnishee's demurrer to the evidence and entered judgment accordingly, to which judgment a writ of error was allowed the plaintiff. Hunt, the judgment debtor

held an indemnity policy issued to him by the Georgia Casualty Company by which the company insured him against loss arising from claims against him by any one injured by him in the operation of his automobile, and also covering damages to his automobile occurring from accidental collision with any other automobile. In order to hold the garnishee liable it must be shown that there was a present fixed liability upon it to pay the assured for the loss insured against. If the evidence established the fact that the judgment debtor had no right to demand payment of the casualty company under the terms of the policy, then the trial court properly held that there was no liability on the garnishee. *Freitas* v. *Griffith*, 112 Va. 343, 71 S. E. 531; *Boisseau* v. *Bass*, 100 Va. 207, 40 S. E. 647, 57 L. R. A. 380, 93 Am. St. Rep. 956.

This liability might arise from that portion of the policy covering the loss sustained by reason of the personal injuries for which the plaintiff recovered her judgment, and also from the separate insurance agreement covering damage to the automobile of the judgment debtor caused by collision with another automobile.

The first question presented to this court, upon the assignment of errors, is whether the evidence before the trial court was insufficient to establish a valid and existing claim on the part of the judgment debtor against the casualty company for the loss occasioned to him by the recovery of the judgment against him in favor of Mrs. Combs.

The material parts of the policy necessary to a determination of this question are as follows:

"Georgia Casualty Company hereby agrees, in consideration of the premium and of the statements contained in the schedule hereinafter set forth, which

statements the assured makes and declares to be true
by the acceptance of this policy,

"To indemnify the assured

"Designated in the schedule

"Against loss arising or resulting from claims upon the
assured for damages, on account of bodily injuries
accidentally suffered or alleged to have been suffered
while this policy is in force, including death resulting
at any time therefrom, by any person or persons, not
employed by the assured, by reason of the ownership,
maintenance or use of" (the automobile owned by
Hunt).

"Subject to the following conditions, which are to be
construed as conditions precedent:

"Reporting Accidents and Claims.—A.   Upon the
occurrence of an accident covered by this policy the
assured shall give immediate written notice thereof,
with the fullest information obtainable at the time, to
the company or its duly authorized agent.   If a claim
is made on account of such accident the assured shall
give the notice thereof with full particulars.   The
assured shall at all times render to the company all
cooperation and assistance in its power.

"Report and Defense of Suits.—B.   If suit is brought
against the assured to enforce a claim for damages cov-
ered by this policy, he shall immediately forward to the
company every summons or other process as soon as
the same shall have been served on him, and the com-
pany will, at its own cost, defend such suit in the name
and on behalf of the assured.

"Cooperation of Assured, Expense.—C.   The as-
sured, whenever requested by the company, shall aid in
effecting settlements, securing information and evidence
of witnesses, and in prosecuting appeals, but the assured
shall not voluntarily assume any liability or interfere

in any negotiation for settlement, or any legal proceeding, or incur any expense, or settle any claim, except at his own cost, without the written consent of the company previously given, except that the assured may provide at the company's expense such immediate surgical relief as is imperative at the time of the accident.

"Assured's Right of Recovery.—D.   No action shall be brought against the company under or by reason of this policy unless it shall be brought by and in the name of the assured for a loss, defined hereunder, after final judgment has been rendered in a suit, described hereunder, and within ninety days from the date of such judgment, to-wit:  For loss that the assured has actually sustained by the assured's payment in money—(a) of a final judgment rendered after a trial in a suit against the assured for damages; (b) of the expense (excluding any payment in settlement of a suit or judgment) incurred by the assured in the defense of a suit against the assured for damages.  The company does not prejudice by this condition any defense against such action that it may be entitled to make under this policy."

It is established by the evidence that, upon the trial of the action for damages against Hunt, the casualty company through its attorneys assumed entire charge of the defense, and upon the rendition of the judgment had a suspending order entered; but no suspend ng bond was given and no appeal taken.   It is further shown that the defendant, Hunt, had not paid the judgment; nor was the judgment satisfied except to the extent of the payment of $482.00 realized upon a sale of the defendant's automobile, which had been impounded and sold.   Under these circumstances it s contended on behalf of the casualty company that there was no indebtedness due the assured, that the stipulation in clause D of the policy, commonly known as the "no

action" clause, defining the loss against which the company insures, or for which it contracts to indemnify the assured by reimbursing to him money actually paid by him in satisfaction of the judgment and for expenses of the trial, is plain and unambiguous and requires no aid of construction to ascertain its meaning; that payment of the judgment by the assured is a condition precedent, and must be shown before any claim for loss can accrue under the policy.

It is insisted on the other hand by the plaintiff in error that because the casualty company took sole charge of the defense of the case to the exclusion of the assured, as it had a right to do under the policy, it should be held responsible for the result notwithstanding the "no action" clause, and that the judgment in the action against the assured became a liability or debt owing unconditionally by the company to the assured, which the plaintiff could subject to her judgment by garnishment.

[2] The use of the automobile has become universal in this country, and automobile accidents occur so frequently that they may be said, like the poor, to be always with us. Naturally automobile owners and users have sought protection by insurance against damages they may have to pay. Doubtless the policies issued for this purpose vary in their terms and conditions, and as is the case with other contracts the meaning of each policy must be determined by the language which the parties have chosen to express their agreement. It is well settled, however, that in considering an insurance contract, and in seeking to ascertain the intent of the parties, the court will take cognizance of the fact that the policy is prepared by the insurance company and is apt to contain stipulations and conditions, at times complicated and of doubtful meaning, placed in the

contract for the protection of the company, and therefore the court will, in cases of ambiguity, lean to a construction most favorable to the assured; still, primarily an insurance contract, like other contracts, must be construed in accordance with its terms; its plain meaning must be given effect; courts cannot make contracts for parties. *Phoenix Ins. Co.* v. *Shulman*, 125 Va. 281, 99 S. E. 602; *Norfolk Fire Ins. Co.* v. *Talley*, 112 Va. 413, 71 S. E. 534, Ann. Cas. 1913-B, 806.

[3, 4] The policy in the instant case is on its face an indemnity contract, having for its purpose to indemnify the assured against loss arising from claims made against him for damages to others injured by him while operating his car, without further specific definition, in the opening statement of the policy showing its general purpose, of the character of the loss insured against. Condition D of the policy, the "no action" clause, contains in unmistakable terms an exact statement of the loss insured against. All portions of the policy must be considered in its construction. The opening clause and condition D, read together, leave no doubt as to the clearly expressed undertaking of the company, that is to reimburse the assured for the money he should have expended in payment of a judgment against him.

We find that policies containing stipulations and conditions similar to those in the policy in the instant case, have been the subject of decisions in numerous cases in other States.

In a very recent case, *Shea* v. *U. S. Fid. & Guar. Co.* (1923), 98 Conn. 447, 120 A. 286, the judgment creditor brought a suit on the policy against the judgment debtor and the company, and the same contention was made on behalf of the plaintiff as is made against the garnishee here, condition G being the no action clause

of that policy, which was in its purport the same as the policy we are considering. The court held in the course of its opinion:

"The insuperable obstacle which stands in the way of upholding this construction is the terms of the policy to which we have referred. To defend any suit brought against the assured cannot be construed to mean to defend successfully such suit, unless there be written into this provision of the policy the word 'successfully' or its equivalent, and this would make a new contract for the parties, which is beyond our power. For the same reason we are without authority to construe condition G to apply merely as a condition precedent to cases where the insurer does not defend the suit against the assured.

"Construing this policy as its language compels, we hold that the agreement to defend does not mean to defend successfully; that the contract is one of indemnity against loss and not against liability; that the injured person has no legal or equitable ground of recovery where there is nothing due the assured under the terms and conditions of the policy; that condition G requires payment of the judgment against the insured before liability arises against the insurer, and is a condition precedent to recovery; that where garnishee process of attachment is available, that method and not a claim of a right in equity is the method by which the injured person should attempt to secure whatever sum may be due the assured under the policy; that an adjudication of bankruptcy against the insured during the pendency of such an action does not create rights in the injured person against the insurer.

"Policies of indemnity with substantially identical terms and conditions as this policy are in extensive use, and there have been numerous cases before the courts

where all the questions involved in this appeal have been passed upon.   The courts have held with practical unanimity that the construction claimed by the plaintiffs cannot be upheld.   The following are typical cases sustaining the position taken by us in this opinion. *Connelly* v. *Bolster*, 187 Mass. 266, 72 N. E. 981; *O'Connell* v. *New York, N. H. & H. R. Co.*, 187 Mass. 272, 72 N. E. 979; *Frye* v. *Bath Gas & Elec. Co.*, 97 Mo. 241, 54 Atl. 395; *Eberlein* v. *Fidelity & Deposit Co.*, 164 Wis. 242, 159 N. W. 553; *Stenbom* v. *Brown-Corliss Engine Co.*, 137 Wis. 564, 119 N. W. 308; *Herbo-Phosa Co.* v. *Philadelphia Casualty Co.*, 34 R. I. 567, 84 Atl. 1093; *Cushman* v. *Carbondale Fuel Co.*, 122 Iowa, 656, 98 N. W. 509; *Ford* v. *Aetna Life Ins. Co.*, 70 Wash. 29, 126 Pac. 69; *Luger* v. *Windell*, 116 Wash. 375, 199 Pac. 760; *Goodman* v. *Georgia Life Ins. Co.*, 189 Ala. 130, 66 So. 649; *Allen* v. *Aetna Life Ins. Co.*, 76 C. C. A. 265, 145 Fed. 881.   As to bankruptcy, see 164 Wis. 242, 159 N. W. 553.   As to equity of the injured, see 122 Iowa, 656, 657, 98 N. W. 509.

"The courts of two States, New Hampshire and Minnesota, support the claims of the plaintiffs.   *Sanders* v. *Frankfort Marine, A. & P. G. Ins. Co.*, 72 N. H. 485, 57 Atl. 655; *Patterson* v. *Adan*, 119 Minn. 308, 138 N. W. 231.   These decisions have been uniformly denied support in other jurisdictions, and their reasoning repeatedly controverted.   See 187 Mass. 266, 72 N. E. 981; 70 Wash. 29, 36, 126 Pac. 69.

"The unfairness to the assured of contracts of insurance with conditions such as appear in this policy before us, led the General Assembly, in the public acts of 1919, chapter 331, to make the insurer liable to the insured whenever liability for a loss occurs without the payment of the final judgment against him by the insured before he can recover on his policy."

In addition to the cases to which the Connecticut court refers, in the following cases the same conclusion was reached: *Finley* v. *U. S. Casualty Co.*, 113 Tenn. 592, 83 S. W. 2, 3 Ann. Cas. 962; *Allen* v. *Aetna Ins. Co.*, 145 Fed. 881, 76 C. C. A. 265, 7 L. R. A. (N. S.) 958; *Lowe* v. *Fidelity & Cas. Co.*, 170 N. C. 445, 87 S. E. 250; *Owens* v. *Jackson-Hinton Gin Co.* (Tex. Civ. App.), 217 S. W. 762; *Fidelity & Cas. Co.* v. *Martin*, 163 Ky. 12, 173 S. W. 307, L. R. A. 1917-F, 924; *Western Auto Ins. Co.* v. *Trimble*, 297 Mo. 659, 249 S. W. 902; *Emerson* v. *Western Auto Indemnity Asso.*, 105 Kan. 242, 182 P. 647; *Schambs* v. *Fid. & Cas. Co.*, 259 Fed. 55, 170 C. C. A. 55, 6 A. L. R. 1231; *Maryland Cas. Co.* v. *Peppard*, 53 Okla. 515, 157 P. 106, L. R. A. 1916-E, 597; *Riner* v. *Southwestern Surety Ins. Co.*, 85 Ore. 293, 165 P. 684, 166 P. 952; *Traveler's Ins. Co.* v. *Moses*, 63 N. J. Eq. 260, 49 A, 720, 92 A. M. St. Rep. 663; *Poe* v. *Phila. Casualty Co.*, 118 Md. 347, 84 A. 476; *Pfeiler* v. *Penn., etc. Cement Co.*, 240 Pa. St. 468, 87 A. 623; *Appel* v. *People's Surety Co.*, 148 App. Div. 70, 132 N. Y. S. 200; *Stenbom* v. *Brown-Corliss Engine Co.*, 137 Wis. 564, 119 N. W. 308, 20 L. R. A. (N. S.) 956; and *Cushman* v. *Carbondale Fuel Co.*, 122 Iowa, 656, 98 N. W. 509.

In *Ford* v. *Aetna Life Ins. Co.*, 70 Wash. 29, 126 P. 69; the plaintiff, after obtaining judgment for his injuries against the defendant holding an indemnity policy, had the company garnisheed. Counsel contended that because the company defended the case, the indemnity insurance became liability insurance, and a judgment after defense by the company fixed the liability of the company. The court said:

"We cannot assent to the respondent's interpretation of the policy. The policy indemnifies against loss and not against liability. It seems quite clear that the liability in clause D, for loss 'actually sustained and

paid in money by him after actual trial of the issue,'
is not enlarged or changed by the stipulations in the
preceding clauses; but that a compliance with its terms
is made a condition precedent to any right of action on
the policy. In short, the policy is one of indemnity
against loss actually sustained and paid in money by
the assured, without regard to who assumes the defense.
In clause B the appellant reserved the privilege and
assumed the obligation of defending claims for damages
covered by the policy. But this does not imply that,
in the event the defense is unsuccessful, it will pay the
judgment. The question of payment is provided for
in clause D."

This case was reaffirmed in the subsequent case of
*Luger* v. *Windell* (1921), 116 Wash. 375, 199 P. 760,
likewise arising upon a garnishee process against the
insuring company.

In *Goodman* v. *Georgia Life Ins. Co.*, 189 Ala. 130,
132, 66 So. 649, 650, the court, on a rehearing, said:

"On the original hearing no authorities were cited by
appellant, and we reached our conclusion by resorting
to what seemed to us to be the plainest of elementary
principles.

"We are now referred to the cases of *Patterson* v.
*Adan* (*Phil. Casualty Co. et al., Garnishees*), 119 Minn.
308, 138 N. W. 281, 48 L. R. A. (N. S.) 184, and *Saunders* v. *Frankfort, etc., Ins. Co.*, 72 N. H. 485, 57 Atl.
655, 101 Am. St. Rep. 688. These cases proceed upon
the theory that, when the insurance company takes exclusive charge of the defense of the assured in the damage action, as authorized by the provisions of the
policy, an ensuing damage judgment against the assured converts the policy into an undertaking to indemnify against *liability*, and not merely against *loss actually
paid;* and this although an express provision of the

policy denies the insurer's liability, except for loss actually paid by the assured.

"We entertain the profoundest respect for the able courts which rendered the decisions referred to, but we cannot accept their conclusions as valid upon the question under consideration. It seems to us that their construction of the insurance contract is dominated by an undue regard for the injured stranger, rather than by a consideration alone of the intention and the obligations of the contracting parties. Such insurance contracts as these may be one-sided and unsatisfactory in their operation, but we know of no principle of law or public policy which forbids their operation exactly as stipulated by the parties, with which, as already stated, a stranger to the contract has absolutely no concern." See also *Cayard* v. *Robertson, et al.*, 123 Tenn. 382, 131 S. W. 864, 30 L. R. A. (N. S.) 1224, Ann. Cas. 1912-C, 152.

[5] According to this great current of authority it has been uniformly held that the only contracting parties are the assured and the indemnity company; that the injured party is in no sense privy to the contract; that the terms of the policy are clear and unambiguous; that the loss for which the company agrees to indemnify the assured is plainly stated; that payment of the judgment by the assured is a condition precedent to any claim on his part against the insuring company; that the circumstance that the company assumes the defense of the damage suit does not alter the terms of its liability; and that the parties having so contracted with each other the courts cannot change the terms of the contract between them. Such is the law accepted by the text writers. 7 Cooley Briefs on Ins. (Supp. vol.), page 1392; 1 Joyce on Ins. (2nd ed.), section 27-B; 2 Va. Law Review 475.

In *Saunders* v. *Frankfort, etc., Ins. Co.*, 72 N. H. 485, 57-A. 655, 101 Am. St. Rep. 688, the court was called upon to construe an indemnity policy which was in its general stipulations much like the policy in the instant case. The court there held that when the company takes control of the proceedings in the action against the assured, it is bound to protect the assured against liability at all stages of the litigation, including satisfaction of the judgment to the extent of the agreed indemnity; that the provision in the policy that no action should lie against the company unless brought to reimburse the assured for loss actually sustained and paid by him in satisfaction of a judgment after trial of the issue, applies only to cases where the insurer denies liability for the injury which is the subject of the action against the assured and therefore refuses to defend. The ruling in this case was followed in the cases of *Patterson* v. *Adan*, 119 Minn. 308, 138 N. W. 281 (48 L. R. A. [N. S.] 184); and *Elliott* v. *Aetna Life Ins. Co.*, 100 Neb. 833, 161 N. W. 579, L. R. A. 1917-C, 1061. These cases are opposed to the conclusions reached in the large number of cases above referred to, and are— one or more of them—in terms overruled in many of them.

[6] It would certainly seem logical and more in consonance with the true intent of the stipulations of the policy to hold that a refusal on the part of the company to defend a suit against the assured constitutes a breach of its contract and makes it liable to the assured for the damages he may suffer, whether such damages be measured by a judgment against him or a voluntary settlement which the assured is forced to make. And such is the ruling in a large number of cases referred to in the recent case of *Independent Milk & Cream Co.* v. *Aetna Life Ins. Co.*, 58 Mont. 152, 216 Pac. 1109, in

which it was held that the insurer, by denying its liability on the claim against the assured and refusing to defend it, breached its contract, released the assured from his agreement not to settle without the insurer's consent, and waived the provision requiring actual trial of the issue.

To the same effect is the decision of the court by Justice Holmes in *St. Louis Beef Co.* v. *Maryland Casualty Co.*, 201 U. S. 173, 26 S. Ct. 400, 50 L. Ed. 712. That case came before the Supreme Court of the United States upon certain questions certified to the court by the circuit court of appeals. Among the questions certified was the following: "Considering the terms of the policy, is the right of the assurer to insist upon the condition of paragraph 8 respecting the rendition of judgment after trial and its satisfaction by the assured dependent upon the assurer's defense of the action against the assured, according to the provision in paragraph 2?" The court answered this question in the affirmative. The reasoning of the court is to the effect that the converse of the proposition embodied in the question would be equally true, and, therefore, if the insurer complied on its part with the stipulations of the policy, its right to defend under the "no action" clause could not be disputed. The court refers to *Sanders* v. *Frankfort, etc., Ins. Co.*, *supra*, with disapproval.

In *Treloar* v. *Keil & Hannon*, 36 Cal. App. 159, 171 Pac. 823, the court reviews at some length various authorities, and reaches a conclusion in harmony with the overwhelming weight of authority.

The policy in the instant case, the original of which has been examined by the court, is not of unusual length, and its main essentials are printed on the first page and so arranged as to be readily understood.

The conditions and agreements in A, B and C are natural and reasonable since the company was interested in the amount of any judgment which might be rendered against the assured, and which would form the measure of the claim against the indemnitor.  The contract is plainly one of indemnity against loss incurred by the assured through the actual payment of the judgment, and not against liability merely.  The clause or condition D is to the effect that when the loss arising from a claim upon the assured for damages has resulted in a judgment against him, and he has paid the judgment, the company becomes liable, and not otherwise.  There is no ambiguity in the language, in which the condition is expressed.

[7, 8] Learned counsel for the plaintiff in error insists that the contract so made is harsh and unfair to the assured.  We agree that it is harsh, and but very imperfectly relieves the average automobile owner from the embarrassment caused by a claim and suit for damages against him.  But the court cannot read into the written instrument any stipulation it does not contain, nor can we give it a construction plainly in conflict with its expressed purport.

Several of the cases quoted above from other States refer to recent statutes requiring the payment, by the indemnity company, of a judgment when rendered against the assured or allowing the injured person to sue thereon.  The General Assembly of Virginia at its recent session enacted a statute requiring the company to insert in its policy a provision allowing the injured person to maintain an action against the company when an execution has been returned unsatisfied because of insolvency or bankruptcy of the judgment debtor—Acts of 1924, page 504.

The question as to the proper construction of the

policy in this case is one of first impression in this juris-
diction, and has been elaborately argued by learned
counsel on both sides with very ample citation of author-
ities; and we have therefore given it full consideration.

The court below, in our opinion, was not in error in
failing to overrule the demurrer to the evidence in this
respect.

[9] It appears, however, that the automobile of the
assured was impounded under the statute and sold and
the net proceeds, $482.00, was applied toward the pay-
ment of the judgment, yet it was necessarily a payment
in satisfaction of the judgment *pro tanto.* It is con-
tended by the plaintiff that this payment was to that
extent a compliance with condition D, citing *McKenna*
v. *International Indemnity Co.*, 125 Wash. 28, 215 P. 66,
and that this amount was therefore due to the judg-
ment debtor by the garnishee. Without undertaking
to determine the effect of a partial satisfaction of the
judgment, this contention would be sound, if a lien
upon this liability of the company to the judgment
debtor was acquired under either execution. There
was no lien so acquired during the life of the first execu-
tion returnable to the first February rules, 1922, for the
record shows that the sum of $482.00 was not paid on
the judgment until March 14, 1922, from which date
only this liability could be taken as fixed and not con-
tingent. On the 8th day of March, 1922, the policy
was surrendered to the company, with an endorsement
thereon in the following language, signed by Hunt:
"In consideration of the sum of two thousand dollars
paid to me this day all claims and rights hereunder are
surrendered and policy is hereby cancelled." This
terminated all liability on the part of the company to
Hunt, and therefore when the second execution was
issued on the 17th day of March, 1922, there was no

debt or liability to which the execution could attach.
It may be that the circumstances demanded, as a
matter of propriety and fairness, that Hunt should
have paid this $2,000.00 on the judgment, but there is
nothing in the record to warrant the inference that,
as to the plaintiff, who was not a party to the contract,
this settlement was in law collusive, nor to negative
the legal right of the parties to make it.    It is to be
noted, however, that Hunt, when testifying as a wit-
ness for the plaintiff, stated that this sum of $2,000.00
was paid him in the settlement for the damage to his
car, which brings us to the remaining question arising
in the case.

[10] There are two certificates attached to the policy,
in the nature of riders.    One of them designated
"automobile collision damage certificate" covers dam-
age to the automobile of the assured arising from an
accidental collision.    It provides that "in the event of
such loss or damage the amount thereof or the nature
and extent of the damage requiring repair or replace-
ment shall be determined between the parties hereto
if possible, otherwise, by two appraisors, one to be
chosen by the assured, and one by the company."
After the usual provision for an umpire in case of dis-
agreement, it is further stated that the company may
accomplish the repair or replacement so determined by
such means as it may elect, or at the option of the com-
pany, pay in money the amount of the loss as fixed by
the appraisors.    Although the certificate provides that
the terms and conditions of the policy shall be con-
sidered as incomplete in the certificate, so far as appli-
cable, it is manifest that, in respect to a loss under the
certificate, we are not concerned with condition D of
the policy.    The evidence discloses the following facts:
Hunt's car was, on August 10, 1921, soon after the in-

stitution of the action, impounded under the statute of Virginia, at the instance of the plaintiff, and from that time on was therefore in *custodia legis;* the attorneys for the company, a foreign corporation, acted for Hunt in the defense of the case and in connection therewith knew of the impounding of the car; Hunt saw the attorneys, who were acting for the company, with reference to the car from time to time; he was unable to give bond and so regain possession of the car to the end that it might be repaired. One of the learned counsel for the company testified that Hunt was unable to give bond; that there was never any refusal or declination on the part of the company with reference to repairs, that it was a question between the company and Mr. Hunt as to when the repairs should be made, that the question between them was as to whether the company would pay him so much money for the repairs and let him have it repaired himself. The further facts are that, after the judgment on December 17, 1921, the order under which the car was sold was entered on February 25, 1922. Whether repairs should be made to the car by the company or whether the company would compensate Hunt for his loss by paying him money was left in abeyance for the several months before the car was sold. Neither party to the policy suggested any appraisement at any time. Hunt testified that he surrendered the policy or "turned it in to the Georgia Casualty Company" on March 8th and that he "received $2,000.00 as payment for his car." On the demurrer to the evidence there was ample to justify the jury in finding that in the end the company paid Hunt $2,000.00 on March 8, 1922, for the damages to his car, whereupon he surrendered the policy. It is further apparent that the company at no time denied liability for the collision damage to the car. There was therefore during the life

of the execution returned no effects at the February rules, 1922, a lien on this existing liability, and the company was liable to the execution creditor if it subsequently, with notice of the execution lien, settled with Hunt upon an agreed amount of $2,000.00 for the damage to the car.

[11, 12] Burks' Pl. & Pr. (2nd ed.), pages 654, 656, where it is also stated that the notice under section 6501 of the Code need not be in any particular form, nor even in writing. Whether or not the company should be held to have had notice of the outstanding execution was a question of fact for the jury to determine. The case having been withdrawn from the jury by the demurrer to the evidence, and the evidence being clearly in conflict on this point, or sufficient to allow the jury to find either way, we must hold, upon well settled principles applicable to the consideration of a case upon demurrer to the evidence, that the company must be regarded as having notice of the existence of the execution. The evidence was further sufficient to justify the jury in finding that, in accordance with the terms of the contract in the certificate with Hunt, the company agreed with him upon an amount of $2,000.00 as compensation for the damage to his car. We are of opinion therefore that this amount of $2,000.00 became the measure, fixed by the company, of its liability to Hunt which was subject to the lien of the execution.

There are assignments of error as to the refusal of the trial court to admit evidence offered by the plaintiff relative to the notice of the execution to the company. Under the ruling of the court these need not be considered.

An order will be entered by this court, reversing the judgment of the lower court, with costs to the plaintiff

in error as the prevailing party, and allowing the plaintiff in error to recover of the Georgia Casualty Company the sum of $2,000.00 with interest from the 8th of March, 1922, to be credited upon the judgment of the plaintiff in error against Hunt on December 17, 1921, with the costs and interest.

*Reversed.*