EXPORT LEAF TOBACCO COM-PANY, Plaintiff,

v.

The AMERICAN INSURANCE COM-PANY OF NEWARK, NEW JERSEY, Defendant.

Civ. No. 523.

United States District Court W. D. Virginia, Abingdon Division.

Jan. 24, 1957.

**304**

Penn, Stuart & Phillips, Abingdon, Va., for plaintiff.

Robert B. Davis, Bristol, Va., for defendant.

BARKSDALE, District Judge.

This case having been tried upon the facts by the court without the intervention of a jury, the court doth now find the facts and state separately its conclusions of law thereon and direct the entry of the appropriate judgment as follows: . .

### Findings of Fact.

Plaintiff, Export Leaf Tobacco Company is a Delaware corporation, and defendant, The American Insurance Company, is a New Jersey corporation, and the amount in controversy exceeds the jurisdictional amount. Plaintiff is a wholly owned subsidiary of Brown & Williamson Tobacco Corporation, and in all its activities here pertinent, plaintiff acted as a facility of Brown & Williamson Tobacco Corporation. Plaintiff has instituted this action in behalf of Brown & Williamson Tobacco Corporation, Aetna Insurance Company, American Equitable Assurance Company, Centennial Insurance Company, Milwaukee Insurance Company, Hanover Fire Insurance Company, Travelers Fire Insurance Company, The Home Insurance

Company, and Standard Marine Insurance Company (hereinafter called "the Eight Carriers"), as their interests may appear, and on its own behalf as its interests may appear.

On and after December 12, 1955, Burley Bee Warehouse was engaged in the business of conducting a tobacco warehouse for auction sales of leaf tobacco in the town of Abingdon, Virginia. As such warehouse, it was subject to the provisions of Section 61–132 of the Code of Virginia, which statute, so far as pertinent, is as follows:

"* * * And the proprietors of every such warehouse shall keep, free of charge to the planter and owner of tobacco, an open policy of insurance upon their respective warehouses, sufficient to cover every loss by fire or water which any person having tobacco stored therein may sustain; and for a failure so to do, they shall be liable to the owners thereof for any damage or loss they may sustain by reason of any partial or total destruction of the tobacco by fire or water."

On November 28, 1955, defendant, American Insurance Company, issued to Burley Bee Warehouse, named insured, its policy providing coverage against loss by fire of "Tobacco in sales warehouses (Auction Form)", which policy was in full force and effect at the time of the destruction of said warehouse by fire. The pertinent provision of the policy is as follows:

"On leaf, loose, scrap and stem tobacco, the property of others while in the custody of the insured for auction * * *, while on the premises of the above described tobacco sales warehouse, or while located within 100 feet thereof, whether in the open or in vehicles."

On December 12, 1955, at approximately 6:45 P.M., Burley Bee Warehouse was destroyed by fire. On that day all the tobacco on the warehouse floor for sale, had been sold. Stored in said warehouse at the time of the

fire, was 42,140 pounds of leaf tobacco, which had been purchased by plaintiff for the account of Brown & Williamson, all of which was destroyed in said fire. Of this total, 17,288 pounds of the net value of $10,709.77 were purchased on December 9, 1955, and the balance, 24,852 pounds of the net value of $15,296.07 were purchased on December 12, 1955, the day of the fire. Prior to the fire, all of the said tobacco, after having been purchased by the plaintiff, had been placed in burlap sheets by a contractor engaged by plaintiff, and moved by him from the points of sale to another location in said warehouse preparatory to moving it out of the warehouse, but had not yet been removed from the interior of said warehouse. Out of the quantity of tobacco purchased on December 9, 1955, prior to the fire, plaintiff's contractor had removed 3,060 pounds thereof from said warehouse, leaving on the warehouse floor from the amount purchased on December 9, 1955, the net amount of 17,288 pounds.

On October 1, 1955, the Eight Carriers and defendant, American Insurance Company, issued a joint floater policy to plaintiff and also for the benefit of Brown & Williamson, covering the leaf tobacco of the insured, located anywhere within the United States or Canada with certain exceptions not here pertinent. This policy was in full force and effect at the time of the fire and covered the tobacco of plaintiff which was destroyed. This policy provided that any loss thereunder should be prorated among the Eight Carriers and defendant, prorata. After the fire, and prior to the institution of this action, the Eight Carriers and defendant advanced to plaintiff or Brown & Williamson the aggregate of $26,149.72 covering the value of the tobacco lost, each company advancing its prorata amount.

These payments were made upon a loan agreement executed by the plaintiff, the provisions of which, here pertinent, are as follows:

"As a loan, without interest, repayable only in the event and to the extent of any net recovery the undersigned may make from any person, persons, corporation or corporations, or other parties, causing or liable for the loss or damage to the property described below, or from any insurance effected on such property * * *

"The undersigned hereby agrees to promptly present claim, and, if necessary, to commence, enter into and prosecute suit against such person or persons, corporation or corporations, or other parties, through whose negligence or other fault the aforesaid loss was caused, or who may otherwise be responsible therefor, with all due diligence, in his, its, or their own name * * *"

I find from the evidence that the methods and procedures of conducting tobacco auctions in the Burley Bee Warehouse were as follows:

Tobacco for auction is brought to the warehouse prior to the beginning of the sale by the owner (usually the grower) and placed in piles, in baskets, on the warehouse floor. Depending upon circumstances, piles of tobacco may be placed on the warehouse floor anywhere from several days to just before the beginning of the sale. A ticket, in triplicate, is placed on each pile before the beginning of the sale. This ticket shows the name of the owner, the weight of the pile, the name of the warehouse, and a blank space for the insertion of the name of the purchaser and the purchase price, as soon as the auctioneer "knocks out" the tobacco to the purchaser who has made the highest bid. When the sale begins, the auctioneer goes to the first pile, accompanied by buyers of tobacco companies, speculators and other interested persons. When the auctioneer has obtained the highest bid, he "knocks out" the pile of tobacco, announcing the purchaser and the purchase price, which information is then and there entered on the tobacco ticket by a warehouse employee. Following the auctioneer comes a clerk or "book

man", who enters the information contained on the ticket in his book. This process continues ordinarily until all the tobacco on the floor has been sold. After the auctioneer has knocked out a pile of tobacco to a purchaser, the owner has the right to reject the sale if he should be dissatisfied with the price. Also, the purchaser has the right to reject the sale if he finds that the tobacco is not of uniform quality, or if he finds that deception has been practiced in the piling of the tobacco. Customarily, if either buyer or seller wishes to reject, he plainly indicates rejection before the transaction has been recorded in his book by the "book man". The right of either buyer or seller to reject must be exercised before payment for the tobacco has been made to the owner, although in very rare instances either buyer or seller is permitted to reject at any time before removal of the tobacco from the warehouse. The seller is paid for his tobacco promptly by the warehouse, as soon as the amount due him can be computed, which is ordinarily within a period of from a half hour to two hours after the sale. The payment to the seller ordinarily takes place during the afternoon or evening of the sale, the warehouse being obligated to pay the seller within twenty-four hours. After the sale, the purchasers remove the tobacco which they have purchased from that part of the warehouse used for daily sales, promptly, so as to make room for the tobacco coming on the floor for the next sale. As soon as they conveniently can, the purchasers remove the tobacco which they have purchased from the warehouse. The time which elapses after the tobacco has been knocked out to a purchaser and its removal from the warehouse depends upon the facilities available to the purchaser. It may remain in the warehouse as much as a week before the purchaser can remove it. Until it is removed from the warehouse, the piles of tobacco remain identifiable whether it remains in baskets or is wrapped in burlap sheets, because one copy of the sales ticket remains on the pile of tobacco. When the purchaser removes his tobacco from the warehouse, he delivers to the warehouse the remaining copy of the sales ticket known as the "punch coupon", which constitutes a receipt by the purchaser to the warehouse for the tobacco. The warehouse promptly makes up and renders its statement of account of money due it from purchasers from these "punch coupons", and payment is made promptly.

At the time of the fire, the Burley Bee Warehouse at 6:45 P.M., December 12, 1955, had sold all the tobacco on the sales floor. All the tobacco here in controversy had been sold at auction and knocked out by the auctioneer to the plaintiff. Either on December 9 or December 12, 1955, plaintiff, through its contractor, had taken all of this tobacco into its physical possession, removed it from the baskets in which it had been sold, wrapped it in burlap sheets and removed it from the sales floor preparatory to removing it entirely from the warehouse. No intention to reject the sale of any of it had been indicated by either the buyer or the seller. Under these and all other pertinent circumstances, I find as a fact that, at the time of the destruction of this tobacco by fire, it was not in the custody of the insured, Burley Bee Warehouse, *"for auction."*

### Conclusions of Law.

The legal question to be determined is whether or not plaintiff's tobacco destroyed in the Burley Bee fire was within the coverage of the policy issued by defendant to Burley Bee. Plaintiff contends that this tobacco was within the coverage of this policy for two reasons:

(1) That notwithstanding the fact that the policy itself did not specifically contain the coverage set out in Section 61–132 of the Code of Virginia, the policy must be construed to contain such coverage by operation of law; and

(2) That the coverage specifically set out in the policy was broad enough to cover this tobacco, because it was still

"for auction" when it was destroyed by fire.

Defendant contends that its policy did not cover this loss, because the statute should not be read into its policy by operation of law, that even if it should be, the statute was only for the protection for persons who were both planters and owners of tobacco, and that the specific coverage set out in the policy did not include this loss, because the tobacco here involved was not "for auction", the auction so far as this particular tobacco was concerned having been completed.

Dealing first with the question of whether or not the Virginia statute, Section 61–132 of the Code of Virginia, should be read into the policy, I am unable to agree with plaintiff's contention that, by operation of law, the policy must be construed to contain the coverage set out in the statute. It is therefore unnecessary for me to consider defendant's contention that the protection of the statute applied only to such persons as were both planters and owners. However, I will say, in passing, that if it were necessary for me to pass on this question, it would be my conclusion that, under the familiar rule of construction of insurance policies, I would hold that the protection of the statute extended to "any person having tobacco stored" in a warehouse.

To support its contention that the statute must be read into the policy, plaintiff cites 10 Michie's Jurisprudence 317, where the principle is stated:

"A statute which prescribes the scope and effect of contracts of insurance, and determines the duties and obligations of the contracting parties, is as much a part of such contracts as if incorporated into them."

I have no quarrel with this principle where applicable, but to me it does not seem applicable here.

Also plaintiff cites and relies upon Maxey v. American Casualty Co., 180 Va. 285, 23 S.E.2d 221, 223, and quotes from it as follows:

"The policy in question was sold and became effective on June 21, 1940. * * * It did not contain the omnibus coverage clause. It is immaterial whether this failure to comply with the statute was inadvertent or wilful. A pertinent statute is as much a part of the contract as if it were incorporated in it. The general rule is 'that laws in existence are necessarily referred to in all contracts made under such laws.' Union Central Life Ins. Co. v. Pollard, 94 Va. 146, 153, 26 S.E. 421, 422, 36 L.R.A. 271, 64 Am.St. Rep. 715."

To the same effect, the following cases might also be cited: Newton v. Employers Liability Assur. Corp., 4 Cir., 107 F.2d 164, Union Indemnity Co. v. Small, 154 Va. 458, 153 S.E. 685, Indemnity Ins. Co. of North America v. Davis, 150 Va. 778, 143 S.E. 328. However, all these cases refer to what was Section 4326a Code of Virginia 1936, which seems to me to be entirely different from the statute here under consideration.

The pertinent portion of that statute is as follows:

"* * * *No such policy shall be issued* or delivered in this State, to the owner of a motor vehicle, by any corporation or other insurer authorized to do business in this State, *unless there shall be contained within such policy a provision* insuring such owner against liability for damages for death or injuries to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner." (Italics mine).

It seems to me that the language of this statute has the effect of a direct mandate to the insurance company that it shall not issue a policy unless it con-

tains the required insuring provision. Quite properly, the courts have held that the effect of this statute is to write into all such policies the coverage prescribed by the statute.

■ The language of the statute here under consideration seems to me to be utterly different. The pertinent part of the statute here under consideration is:

"* * * *the proprietors of every such warehouse shall keep* * * * an open policy of insurance upon their respective warehouses, sufficient to cover every loss by fire or water which any person having tobacco stored therein may sustain; *and for a failure so to do, they shall be liable* to the owners thereof for any damage or loss they may sustain by reason of any partial or total destruction of the tobacco by fire or water." (Italics mine).

That language constitutes a mandate, not to insurance companies, but to *the proprietors* of warehouses. This statute contains no command to insurance companies that such policies must contain certain coverage: the command is to warehouse proprietors that they must procure insurance with the coverage required by the statute. And if there were any doubt as to the party upon whom the responsibility rested, it seems to me that the last clause of the statute would remove any such doubt when it provides that, for a failure to procure insurance with the required coverage, the warehouse shall be liable to the owner for any loss which he might sustain. I therefore conclude that the provisions of the statute äs to the coverage should not be read into or considered a part of the contract of insurance here under consideration.

There is no allegation or proof that Burley Bee, in procuring this insurance from defendant, requested the coverage which the statute directed it to have, there is nothing to indicate that defendant misled Burley Bee or gave it any reason to believe that the policy of insurance provided the coverage which the statute made it the duty of the warehouse to obtain. If there were any such circumstances as these in the case, my conclusion might well be quite different. Morris Oil Corporation v. Maryland Casualty Co., D.C., 136 F.Supp. 63.

If the plaintiff is to prevail, it must do so by virtue of the specific coverage of the policy, which coverage is:

"on leaf, loose, scrap and stem tobacco, the property of others, while in the custody of the insured *for auction,* * * * while on the premises of the above described tobacco sales warehouse or while located within 100 feet thereof, whether in the open or in vehicles." (Italics mine.)

■ Counsel for plaintiff vigorously contend that the tobacco here in controversy was within the specific coverage of defendant's policy. They urge that this tobacco was still "for auction", since the auction had not been completed. It is true that plaintiff had not paid for this tobacco, and there was still the remote possibility that plaintiff or some owner might seek rejection of some sale. However, without repeating the facts which I have found, the conclusion seems to me inescapable that, as to this tobacco, the auction was over. At the time of the fire, it was not in the warehouse "for auction", but for removal to its factories by plaintiff who had bought and taken possession of it.

■ I am well aware of the principle stated in Ayres v. Harleysville Mutual Casualty Co., 172 Va. 383, 2 S.E.2d 303, 305, that "* * * insurance policies are to be liberally construed in favor of the assured * * *", but I am also aware that "* * * courts cannot make contracts for parties." Combs v. Hunt, 140 Va. 627, 125 S.E. 661, 664, 37 A.L.R. 621. See also London Guarantee & Accident Co. v. C. B. White & Bros., 188 Va. 195, 49 S.E.2d 254; Harmon v. Farm Bureau Mut. Automobile Ins. Co., 172 Va. 61, 200 S.E. 616.

It follows that I conclude, as a matter of law, that the loss of plaintiff's tobacco was not within the coverage of defendant's insurance policy, and that therefore an order must be entered dismissing this action at the costs of the plaintiff.