## CIRCUIT COURT OF FAIRFAX COUNTY

Bosco

v.

Bosco

November 20, 1989

Case No. (Law) 92298

By JUDGE THOMAS S. KENNY

This is before the court on the plaintiff's motion for an order of payment directing Tandem Insurance Group, Inc., to pay over the surrender value of certain single premium annuities belonging to the principal defendant. Tandem has issued two annuity contracts for the benefit of the principal defendant, Dr. Bosco, which will not mature for several more years but have a current value in excess of $100,000.00. Mrs. Bosco, the plaintiff in this garnishment action, is a judgment creditor of Dr. Bosco's for more than $150,000.00 in support arrearages.

In the course of oral argument, counsel represented that the annuities are a "rollover IRA," by which I understand that at some time in the past Dr. Bosco received a lump-sum distribution from a qualified retirement plan and sheltered it from taxation by "parking" it in an individual retirement annuity. By doing so, he deferred federal and state income taxes on the lump-sum distribution until he actually starts receiving distributions when the annuities mature. He apparently has the right to cash in the annuities prior to maturity, but doing so would subject the proceeds to immediate income taxation as well as an excise tax.

Counsel for Dr. Bosco does not claim that Virginia law provides an exemption for funds held in an IRA or other retirement plan and has cited no authority for such

a proposition. Rather, he claims that (1) the annuities are not yet mature, and there is therefore no current liability to Dr. Bosco by Tandem which would be subject to garnishment; and (2) even if Dr. Bosco has the right to cash the annuities now, the court cannot compel him to do so because of the substantial tax exposures and forfeitures of future benefit that this would entail.

With respect to the first argument, I believe that Dr. Bosco's present interest in the annuities is subject to garnishment. Counsel for Dr. Bosco has referred me to *Equico Lessors, Inc. v. Metropolitan Life Insurance Company*, 88 Cal. App. 3d Supp. 6, 151 Cal. Rep. 618 (1978), in which an intermediate appellate court held that the cash value of a life insurance policy was not subject to garnishment because it is in the nature of "pure expectancy" or "contingency." In effect, because the liability has not been fixed by the insured's exercise of his option to surrender the policy, there is no existing indebtedness subject to garnishment. There appears to be no Virginia case directly on point, but the *Equico* case is only analogous to this fact situation, anyway; instead of a life insurance policy which will only pay off if the insured dies while the policy is in force (which may depend on such factors as the circumstances of death or whether the insured continues to pay premiums), the case here involves a pair of single-premium contracts that are guaranteed to pay out for a period of at least ten years and for as long thereafter as Dr. Bosco may live. This hardly has the same nature as the "pure expectancy" or "contingency" found in *Equico*.

Rather, this case seems more closely akin to *Combs v. Hunt*, 140 Va. 627 (1924). In that case, an insurance company contracted to indemnify the insured against losses actually incurred by him as damages to his automobile and for amounts paid by him to third parties to satisfy judgments against him. A judgment creditor garnished the policy when her other efforts to satisfy the judgment failed. The court held that since no moneys had actually been paid on the judgment by the insured, the insurance company was not liable to the insured under that portion of its policy; however, the company *was* liable for the amount owed to the insured for damages to his own vehicle, even though the exact amount of the liability or the method

of satisfying it was not known at the time of garnishment. In other words, where a liability is certain, even though the amount may be undefined, the interest is subject to garnishment, but where the liability itself is uncertain, no garnishment will be had. Here, the insurance company's liability to Dr. Bosco is certain, even though there may be some uncertainty as to when the annuity may begin and how long it will run. Unlike *Combs*, however, we can put a present value on the liability here, since the annuities have a definite cash surrender value. I hold that Mrs. Bosco is able to garnish Dr. Bosco's present interest in the contracts, which is identified by their cash surrender value.

As to the second grounds for his objection to the order of payment, counsel has cited no authority to say that because adverse tax consequences might ensue for a judgment debtor, a judgment creditor is barred from pursuing a garnishment to which she would otherwise be entitled. Is the situation here any different from one in which a judgment debtor's real estate is sold to satisfy a judgment, possibly triggering a capital gain to him? I recognize that the tax costs to Dr. Bosco will be staggering, probably in excess of $40,000.00. However, until the General Assembly permits me to consider the tax consequences of garnishment, I cannot.

Furthermore, this is a risk that Dr. Bosco apparently chose to run. A judgment against him for $157,647.50 was entered in this court in July, 1988, and in November and December of that year, while the judgment remained unsatisfied, he purchased these annuities with single premium payments aggregating over $100,000.00. He could have chosen to use the cash to pay his tax liability and apply the balance to satisfying the judgment. As a matter of public policy, I do not think he should be permitted to put the annuities beyond the reach of his creditors, nor should he be permitted to make his creditors now pay the taxes which he will incur. This is especially so when the judgment is for arrearages in support.

The order of payment will be entered.