No. 22,112.

J. O. EMERSON, Trustee in Bankruptcy of PRESTON STERRETT, *Appellee*, v. THE WESTERN AUTOMOBILE INDEMNITY ASSOCIATION, *Appellant*, et al.

### SYLLABUS BY THE COURT.

1. AUTOMOBILE INDEMNITY ASSOCIATION—*An Insurance Company*. An incorporated association, whose business is that of indemnifying its members against loss resulting from damages inflicted by automobiles upon person or property of others, is an insurance company, and, by virtue of the provisions of section 51 of the civil code, an action on the contract of indemity may be brought in the county in which the plaintiff resides.

2. SAME — *Damages — Condition Precedent to Action on Policy*. The policy and by-laws of the defendant considered, and *held*, that payment in money by the policyholder of his loss or expense, after trial of the issue, is a condition precedent to action on the policy. *Held further*, this condition is not waived or forfeited by defending the action in which the issue was tried, pursuant to a by-law casting such defense on the insurer.

3. SAME—*Wrongful Conduct of Insurer—Estoppel*. If the insurer, by wrongful conduct, unjustifiably prevent payment of loss in money after trial of the issue, it will be precluded from asserting, in an action on the policy, that the policy did not mature by reason of nonpayment.

4. SAME. In such an action, certainty that payment would have been made if the insurer had not meddled, is not essential to estoppel. Reasonable assurance, under all the circumstances, that payment would have been made is sufficient.

5. EVIDENCE — *Privileged Communications.* Good-faith communications between attorney and client, relating to the best method of protecting the client's interests, are privileged; and the rule that privilege may not be urged respecting communications relating to perpetration of fraud is limited, ordinarily, to cases of actual fraud, involving moral turpitude.

Appeal from Wyandotte district court, division No. 2; FRANK D. HUTCHINGS, judge. Opinion filed July 5, 1919. Reversed.

*A. M. Keene,* of Fort Scott, *L. W. Keplinger,* and *C. W. Trickett,* both of Kansas City, for the appellant.

*David F. Carson,* of Kansas City, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by the trustee in bankruptcy of a member of a mutual association which indemnifies its members against loss on account of injury by automobile to the person or property of others, to recover the sum specified in the contract of indemnity. The plaintiff recovered, and the defendant appeals.

The contract was made with W. P. Sterrett, and insured him in the sum of $2,500. Sterrett inflicted an automobile injury upon Carl A. Anderson, for which Anderson recovered judgment in the sum of $2,500. Proceedings in aid of execution were instituted against Sterrett, with barren results. Afterwards Sterrett filed a petition in voluntary bankruptcy, and was adjudged bankrupt. His liabilities were inconsiderable, aside from the judgment in favor of Anderson, and he had no assets except his automobile and policy of insurance. He was a practicing physician, and had an income from his profession of $4,000 per year. The association's attorneys represented Sterrett in all the legal proceedings which have been referred to. It was charged that the attorneys were employed and paid by the association, which also paid all costs and expenses. It was further charged that the association, through its attorneys, induced and procured Sterrett to become bankrupt.

The defendant had its office and place of business at Fort Scott, in Bourbon county. It was sued in the district court of Wyandotte county, and the summons which was served issued

from that court. The plaintiff resides in Wyandotte county. Section 51 of the civil code provides that an insurance company may be sued in the county where the cause of action arose, or where the plaintiff resides (Gen. Stat. 1915, § 6941). The defendant was chartered under subdivision 52 of section 2099 of the General Statutes of 1915, providing for organization of accident, casualty or liability companies. The defendant calls itself an indemnity association. An inspection of its by-laws and indemnity contract discloses that its business is simply that of insuring its members against loss resulting from damages inflicted by automobiles upon person or property of others, and it is an insurance company; therefore, the defendant was suable in Wyandotte county.

The by-laws of the association contain the following section:

"No action shall lie against this association to recover for any loss sustained by a member, unless it shall be brought by any such member for loss or expense actually paid in money by him, after actual trial of the issue, nor unless such action is brought within eighteen months after payment of such loss or expense."

The plaintiff argues that various expressions in the defendant's by-laws and policy indicate that the defendant insured against liability rather than loss. The quoted by-law was evidently adopted for the purpose of definitely settling that question. Its terms are unequivocal and unmistakable, and payment in money by a policyholder of his loss and expense, after trial of the issue, is a condition precedent to action on his policy.

The by-laws contain the following provision:

"If suit is brought against a member of this association to enforce a claim for damages, indemnity for which is provided for by his certificate of membership, such member shall immediately forward to the secretary of this association every summons or other legal process as soon as same shall have been served on him, and this association will, at its own cost, defend such suit in the name and on behalf of such member."

It is contended that this by-law is a characteristic feature of a liability policy; that the insurer cannot be defender against liability until judgment has been entered, and then take the position of an indemnity insurer; that the two attitudes are inconsistent; and, consequently, that the insurer may not defend, and then insist on prepaying of loss as a condition to its own liability to pay. The case of *Davies v. Maryland Casualty*

Emerson v. Indemnity Association.

*Co.,* 89 Wash. 571, L. R. A. 1916 D, 395, supports this view. In the opinion it was said:

"Tracing, now, the growth of the indemnity policy up to its present phraseology, its basic principle was that the assured would not only first pay the loss, but that he would attend to his own defense. The indemnifier, standing aloof, would pay the final bill, providing the defense had been honestly conducted by the employer. Generally speaking, the practice, as well as the contract of the indemnifier to take over the defense, came later. To do that under the old liability policy was natural, but under the pure indemnity policy was not natural. The insurer desired to defend through his own agent because he could do so more cheaply than the employer, who would charge the expenses to him, and because he could be more certain of the good faith of that defense. He accordingly wished to become a mere reimburser in law, while a defender in fact.

"But in taking over the defense, the insurer assumes a feature of a liability contract as distinguished from an indemnifying contract. When an accident occurs, he hurries to protect the assured and himself from liability, by defeating the claimant in advance. But when the claimant has been successful, the insurer, falling back on the other theory, argues that he is not a liability insurer, only a reimbursement insurer. This shifting subjects him to the familiar doctrine of estoppel by election in inconsistent positions. The law does permit him to have the exemptions of a reimbursement engagement, but he cannot have the benefits of a liability engagement at the same time. If he wishes to rely upon the former, he may continue to do so under the words of his contract, and leave the defense to the assured. When he takes over the defense himself, he will not be heard to say that he has not assumed the position of a liability insurer." (p. 575.)

This argument admits facts which refute it. After accident, an automobile owner is not grievously concerned about either legal liability or expenses, so long as an insurance company must pay the bills. To protect itself against indifference, improvidence, and even collusion and downright fraud, the insurer is obliged to undertake defense, and make its own outlays for expenses. Under these circumstances, the insurer is not put to any election to forego these protective measures, or give up writing indemnity policies. Until the state interferes, an indemnity policy may lawfully be written which permits the insurer to guard against rendition of a judgment when there was no liability, and against rendition of a collusive or unjust judgment when there was liability. An automobile owner may take or leave such a policy; but when such a contract has been made, the insurer is not required to give up one feature in order to enjoy the benefit of the other.

·The plaintiff was unable to plead payment in money, by himself or by the bankrupt, of the Anderson judgment. When the trustee in bankruptcy was appointed, the policy became assets in his hands. It was a valid contract, enforceable by him, but it was immature. It had not matured because the loss had not been paid. Except for the condition, paid "in money," Sterrett's surrender of his property to the trustee in bankruptcy for benefit of creditors would have constituted payment which would have matured the policy, whatever the measure of liability might have been; but the policy required payment in money, and no money has been paid. On what theory, then, is it proposed to hold the defendant liable?

The judgment of Anderson against Sterrett created an obligation on the part of Sterrett of the highest order. While he did not have, at the time, sufficient property to pay the judgment, he had earning capacity and a good practice, which constituted capital and furnished a basis for credit; and the law did not impute to him an intention to evade or to defeat the obligation of the judgment. In case he did pay, the defendant's obligation to pay became mature. The allegations of the petition were that the defendant assumed complete domination and control of Sterrett and his affairs, in order to prevent payment. It virtually substituted itself for Sterrett in the various court proceedings, not to subserve his interests, but to defeat liability on its own contract. Even the bankruptcy proceeding was only nominally voluntary on Sterrett's part. Acting according to the defendant's will, rather than his own, he filed the petition, not to be discharged from his debts, but to prevent the defendant from ever becoming indebted. The result was, the defendant destroyed Sterrett's obligation, and destroyed possibility of the policy becoming mature. The wrong thus committed was quite like unjustifiably inducing breach of contract between others. Anderson had a property right in the legal obligation of the judgment against Sterrett, of the same virtue as if the obligation arose upon contract. To defeat that right was to injure Anderson, as certainly as if he had been deprived of tangible property. Express malice on the part of the defendant was not necessary to make its conduct tortious. Malice implied from the intentional doing of a wrongful act without justification was sufficient, and was inferable from the facts pleaded. The ultimate interest of the defendant was

not enough to justify it in coming between Sterrett and Anderson, and it makes no difference that Sterrett's situation was such it would have been perfectly legitimate for him, acting voluntarily, to take advantage of the bankruptcy act. The ground of the action is not the tort of the defendant. The suit is on the policy, and the defendant is precluded from taking advantage of its own wrong by saying an event has not taken place, the occurrence of which it has prevented.

The theory of liability just proposed is not as plainly presented in the petition as might be. There is no clear-cut statement that the defendant's misconduct did, in fact, prevent payment of Sterrett's loss in money. It is only by inference, from allegations that the defendant's purpose was to prevent payment, that the judgment was not paid, and that the defendant made itself liable by what it did, that such a charge may be discovered. It will be assumed that the true intent of the pleading was that nonpayment of the judgment resulted from accomplishment of the defendant's purpose by the means employed to that end.

It is indispensable to the plaintiff's cause of action that Sterrett probably would have paid the judgment in money, voluntarily or involuntarily, if the defendant had not corrupted him and substituted itself for him, because the defendant's conduct was without harmful effect unless it defeated probable payment. No matter how reprehensible it may be, conduct is of no legal consequence whatever unless it occasion damage to somebody. The principle is that which underlies liability for all torts. A good statement of the principle appears in the case of *Angle v. Chicago, St. Paul, &c., Railway,* 151 U. S. 1, a leading case on the subject of unjustifiable interference with contract relations. After reciting the facts, which need not be restated here, Mr. Justice Brewer said:

"Surely it would seem that the recital of these facts would carry with it an assurance that there was some remedy which the law would give to Angle and the Portage Company for the losses they had sustained, and that such remedy would reach to the party, the Omaha Company, by whose acts these losses were caused.

"That there were both wrong and loss is beyond doubt.

"It has been repeatedly held that, if one maliciously interferes in a contract between two parties, and induces one of them to break that contract to the injury of the other, the party injured can maintain an action

against the wrongdoer: . . . *Bowen v. Hall*, 6 Q. B. D. 333, 337, in which it was held that an action lies against a third person who maliciously induces another to break his contract of exclusive personal service with an employer, which thereby would naturally cause, and did in fact cause, an injury to such employer. In the opinion of Brett, L. J., it was said 'that wherever a man does an act which in law and in fact is a wrongful act, and such an act as may, as a natural and probable consequence of it, produce injury to another, and which in the particular case does produce such an injury, an action on the case will lie.' " (pp. 10, 13, 14.)

The necessary element of the plaintiff's cause of action just considered was ignored in the instructions given the jury.

Absolute certainty that Sterrett would have paid the judgment if the defendant had not meddled is not essential. A fair and reasonable probability is all that need be established. In the opinion in the case just referred to, this subject was discussed as follows:

"That this was a wrongful interference on the part of the Omaha Company, and that it resulted directly in loss to the contractor and to the Portage Company, is apparent. It is not an answer to say that there was no certainty that the contractor would have completed his contract, and so earned these lands for the Portage Company. If such a defense were tolerated, it would always be an answer in case of any wrongful interference with the performance of a contract, for there is always that lack of certainty. It is enough that there should be, as there was here, a reasonable assurance, considering all the surroundings, that the contract would be performed in the manner and within the time stipulated, and so performed as to secure the land to the company.

"It certainly does not lie in the mouth of a wrongdoer, in the face of such probabilities as attend this case, to say that perhaps the contract would not have been completed even if no interference had been had, and that, therefore, there being no certainty of the loss, there is no liability." (p. 12.)

The court erred in admitting improper evidence over objection. A number of written communications between the defendant and its attorneys were read to the jury, which were privileged. Admission of the communications was followed by examination of witnesses upon their contents, and in this way the plaintiff virtually made his case. Authorities are cited to the effect that privilege may not be urged respecting communications relating to perpetration of fraud. That is true in the case of actual fraud involving moral turpitude. Professor Wigmore is of the opinion the line should not be drawn so

closely. He may be correct, although the weight of authority seems to be otherwise. (4 Wigmore on Evidence, § 2298, p. 3218.) It is difficult to draw any hard and fast line; but there would be little left of the privilege if, in a doubtful case, communications between attorney and client relating to the best way to protect the client's interests could be inquired into, although the final conclusion, perhaps on appeal to this court, might be that fraud in law was involved.

At the next trial the testimony elicited by the examination of witnesses respecting the contents of the privileged communications will be unavailable, as well as the communications themselves.

The judgment of the district court is reversed, and the cause is remanded for a new trial.