[Civ. No. 506. Fourth Appellate District.—February 24, 1932.]

HELEN SEARS, a Minor, etc., Respondent, v. ILLINOIS INDEMNITY COMPANY, Appellant.

Kidd, Schell & Delamer for Appellant.

L. M. Cox for Respondent.

LAMBERT, J., *pro tem.*—The facts leading up to this case are briefly that on the eighth day of May, 1927, Gilbert Angrimson owned a Buick automobile. This automobile was being driven by one Wilson Parker, who was then a boy of the age of fifteen years, four months and twenty-nine days. While he was driving the car an accident occurred in which the plaintiff and respondent herein, Helen Sears, sustained injuries. The respondent then sued Gilbert Angrimson, his wife, Gilbert Kent Angrimson, the son of Gilbert Angrimson, and his wife, and Wilson Parker, for damages for these injuries. At the time of the happening of the accident Gilbert Angrimson was insured in the Illinois Indemnity Company, the appellant herein, under a policy of indemnity insurance. In the first action the Illinois Indemnity Company, appellant herein, employed counsel and defended the action on behalf of all the Angrimsons. Wilson Parker was represented by other counsel. Before defending the suit the appellant herein entered into a nonwaiver agreement with Gilbert Angrimson and his wife wherein it was agreed that by defending the suit it did not waive any of the terms or conditions of the policy or admit any liability under it. It was quite elaborate but the purpose of it was to preserve whatever defense the appellant might

have to a suit against it in case plaintiff recovered judgment in the then pending action. The first action was tried by a jury and resulted in a judgment in favor of respondent against Gilbert Angrimson and Gilbert Kent Angrimson, his son, but no judgment was rendered against Wilson Parker. The appellant herein refused to pay the judgment on the ground that inasmuch as the car was being driven at the time by a person under sixteen years of age it was not liable under its policy. The respondent then, in pursuance of the Statutes of 1919, brought an action against appellant on the judgment heretofore mentioned, which action resulted in a judgment against appellant in the sum of $5,000, the amount of the policy. This appeal is prosecuted from the judgment so rendered.

The appeal presents two questions: First, whether appellant was liable under its policy in view of the fact that the automobile at the time of the accident was being driven by a person under sixteen years of age; second, whether appellant waived this defense by employing counsel and defending the Angrimsons in the first suit.

Taking up the first proposition we find this policy contains the following clause with reference to this matter: "Exclusions: 2. This company shall not be liable for: (a) . . . (d) while driven or manipulated by any person under the influence of intoxicating liquor or under the age fixed by law, or under the age of sixteen years in any event; . . . "

The trial court found in this action (finding 10) that at the time respondent was injured the Buick automobile was being driven by Wilson Parker, a minor, of the age of fifteen years, four months and twenty-nine days. The court also in the same finding found that "Gilbert Kent Angrimson, one of the defendants in said case, was present in said Buick automobile at the time the said accident occurred and the said automobile was at said time in the control of, under the management of and being operated by the said Gilbert Kent Angrimson". From the foregoing finding it will be seen—and it is admitted—that the car was being driven by a minor under sixteen years of age at the time of the accident, and comes squarely within the excepted class in the policy.

Turning now to the decisions for some light on the subject, we find that able and industrious counsel in the case have been unable to find the problem exactly solved by any decision in this state, and our own efforts have met with no more success. However, we do find in California, cases similar in principle. In *Maryland Casualty Co.* v. *Industrial Acc. Com.*, 178 Cal. 491 [173 Pac. 993], which was a case in which the company had issued a workmen's compensation policy covering the liability of the employer because of the injury to any employee ''engaged in general farm work, excluding the operation of farm machinery'', an employee, while standing in the field and using a light to guide the engineer, who was operating the machine, was injured by a bar attached to a disk harrow which was being pulled by the machine. The court held that the company was liable because the employee so injured was not operating the machine. Holding that the policy did not cover injuries to those actually engaged upon the machine, the court says, with reference to the exclusion provision of the policy, page 494: ''We think, therefore, that the meaning of the phrase should be restricted, so that it would include those who were actually engaged upon the machine, and not those who were assisting in general operations for which the machine furnished only the motive power.''

In *Coolidge* v. *Standard Acc. Ins. Co.*, 114 Cal. App. 716 [300 Pac. 885], which was a case wherein the accident occurred in 1926, at the time of the accident the automobile was being operated with a trailer attached. The fact that the trailer was so attached had nothing to do with the accident. The policy excluded operation of the automobile while a trailer was attached thereto. Notice of the accident was not given the insurance company until May 12th. The insurance company undertook the defense of the action between the injured party and the insured under a written reservation of rights. It was claimed that the fact that a trailer was attached to the automobile did not negative liability upon the part of the insurance company and it was further contended that, even if it did, the undertaking of the defense of the suit against the insured constituted a waiver of the right of the insurance company to rely either upon the fact of the trailer being attached to the automobile or on the fact of the delayed notice. The

court held that the operation of the automobile with a trailer attached resulted in there being no liability upon the company under the policy for an accident occurring under such circumstances. In this connection the court says, page 723:

"There is, however, no evidence in the present case that the trailer did actually cause the accident or that it materially contributed to the mishap. The answer did allege that the trailer was attached to the automobile at the time of the accident, and the claim was made that this fact exempted the company from liability. It is true the answer failed to allege that the attached trailer actually caused the accident or that it contributed to the affair. It was not necessary to make these allegations. The defendant's exemption from liability does not depend upon the attached trailer becoming the cause of the accident or even contributing to the casualty. The very fact that the trailer was being towed at the time of the accident relieved the defendant from liability according to the specific terms of the insurance policy. The company was entitled to protect itself against this added hazard. The unambiguous terms of the policy did exempt the company from liability while the automobile was towing a trailer."

In other jurisdictions we find some cases cited by appellant touching the principle under consideration as follows: In *Morrison* v. *Royal Indemnity Co.*, 180 App. Div. 709 [167 N. Y. Supp. 732, 733], the policy of automobile insurance provided that the company would not be liable for injuries caused in whole or in part by an automobile while being driven or manipulated by any person in violation of law as to age, or if there were no legal age limit, under the age of sixteen years. At the time the accident occurred the driver of the automobile was seventeen years of age. Consequently the provision of the policy which became important was that exempting the company where the automobile was being driven by a person in violation of law as to age. The accident occurred in New York. The New York statute provided: "Age of operator. No person shall operate or drive a motor vehicle who is under eighteen years of age, unless such person is accompanied by a duly licensed chauffeur or the owner of the motor vehicle being operated." It appeared that the driver of the automobile

at the time of the happening of the accident was not accompanied by a duly licensed chauffeur or by the owner of the automobile. The court held that he was driving the automobile in violation of the provisions of the New York statute as to age limit. The court therefore held that there was no liability under the policy upon the part of the defendant insurance company and a judgment of nonsuit against the plaintiff was affirmed.

In *Wagoner* v. *Fidelity & Casualty Co.*, 215 App. Div. 170 [213 N. Y. Supp. 188], the policy again provided against liability caused by any automobile while operated by or while in charge of any person who was either under the age fixed by law for the driver of automobiles or who in any event was under the age of sixteen years. Again it happened that the driver of the automobile was seventeen years of age. The accident happened in New York and the same statute applied as in the previous case. Again since the driver was not accompanied by a licensed chauffeur or the owner of the automobile the court held that there was no liability upon the insurance company under its policy and a judgment in favor of the plaintiff was reversed and the complaint ordered dismissed.

The case of *Oxford* v. *Fidelity & Casualty Co.*, 248 Pa. 312 [93 Atl. 1072], involved an employer's liability insurance policy which, however, provided that it did not cover injuries suffered or caused by a minor hired contrary to law or by a minor while performing work contrary to law. The statute prohibited the employment of minors under the age of eighteen in certain work. The plaintiff employed such a minor on such work and the minor sustained an injury. It was held that the defendant insurance company was entitled to defend the case on the ground that the accident was not covered by its policy.

*Fidelity & Casualty Co.* v. *Palmer*, 179 Ky. 518 [L. R. A. 1918C, 808, 200 S. W. 923], involved an elevator liability insurance policy. Again the policy contained a condition whereby it would not cover injuries or death suffered or caused by the elevator while being operated by a boy under the age fixed by law for elevator attendants. The elevator was in fact being operated by a boy under the age fixed by law and a passenger therein was injured. It was held that the insurance company was not liable under the terms

of its policy and that it was immaterial what cause produced or brought about the injury to the passenger. It was further held that it was also immaterial whether that injury was caused by some act or omission on the part of the boy running the elevator or was caused by some defect in the elevator. The court held that the policy simply did not cover the accident and that there could, therefore, be no liability upon the insurance company. The court says:

"A further argument is made by counsel for the hotel company that as the accident and resulting injury suffered by the passenger who recovered damages from the hotel company was due to a structural defect in the elevator and not to any fault or negligence on the part of the operator, the insurance company should not be allowed to escape liability under the contract. But if we should attempt to adopt this construction we would be at once confronted by the words of the contract exempting the insurance company from liability for 'injuries to any person in or about the elevator while operated by or in charge of any person under the age fixed by law for elevator attendants'. So that giving to these exempting words their ordinary meaning and such meaning as they would have in common, everyday usage, it makes no difference what cause brought about the accident or injury, or how it happened. The exemption clause is sweeping in its terms, and the only fact necessary for the insurance company to establish to make the exemption from liability effective is to show that the elevator at the time the injury complained of happened was operated by or in charge of a person under the age fixed by law for elevator attendants. The exemption of the company from liability does not depend on the fact that the injury was caused or brought about by some act of omission or commission on the part of the elevator attendant, but on the fact that a prohibited elevator attendant was operating or in charge of the elevator. When the elevator is being operated by a prohibited attendant it is wholly immaterial what caused or produced or brought about the accident or injury or death to the passenger."

*Kilby Car etc. Co.* v. *Georgia Casualty Co.*, 209 Ala. 356 [96 South. 319, 320], involved an employer's liability policy whereby the company agreed to indemnify the employer for

claims for damages from bodily injuries, excluding, however, injuries "suffered by or caused by any child employed contrary to law as to age". A child was so employed contrary to law as to age. The insurance carrier paid out certain moneys on account of the claim made by the employer and then on discovering the facts brought this action to recover said moneys so paid. Judgment went in favor of the employer and the insurance company's motion for a new trial was granted. The employer appealed from this order. The order was affirmed, the Supreme Court holding that under the policy there was no liability upon the part of the insurer whether or not the unlawful employment was the cause of the injury. Again the court holds that the accident simply was not covered by the policy and in this connection it says:

"The foregoing is in line with the recognized rule that policies of insurance must be construed more strongly against the insurer; still the words of the policy must be given the meaning which they ordinarily bear, and, where it is manifest, as it is in the instant contract, that the intention of the insurer and the insured was that liability should attach only in given circumstances, the law will uphold the contract according to its true intent and import. It is a common expression of insurance law that the policy is the measure of the rights of everybody under it. (*Northwestern Ins. Co.* v. *McCue,* 223 U. S. 252, 38 L. R. A. (N. S.) 57, 56 L. Ed. 426, 32 Sup. Ct. Rep. 220; *Morgan* v. *Prudential Life Ins. Co., supra* [209 Ala. 110, 95 South. 355]."

From the above authorities, which appear logical and sound, it would seem that the age of the driver of the car would be a good defense as between Angrimson and the insurance carrier. The Supreme Court in *Hynding* v. *Home Acc. Ins. Co.,* reported in 214 Cal. 743 [7 Pac. (2d) 999, 1000], discusses the question of certain provisions of policies similar in their general provisions to the one under consideration. In that case the plaintiff, after obtaining a judgment against the negligent driver, the insured, brought an action against the insurance carrier to recover on the judgment pursuant to the statute of 1919. (Stats. 1919, p. 776.) This act, so far as it is material here, provides as follows:

"No policy of insurance against loss or damage resulting from accident to, or injury suffered by another person and for which the person insured is liable . . . or against loss or damage to property caused by . . . any vehicle, and for which loss or damage the person insured is liable, shall be issued or delivered to any person in this state . . . unless there shall be contained within such policy a provision that the insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injury sustained or loss occasioned during the life of such policy and stating that in case judgment shall be secured against the insured in an action brought by the injured person or his heirs or personal representatives, in case death resulted from the accident, then an action may be brought against the company on the policy and subject to its terms and limitations, by such injured person, his heirs or personal representatives, as the case may be, to recover on said judgment."

The insurance carrier set up the defense that the policy contained what is commonly called a co-operating clause, whereby the insured agreed to assist the insurance company in the defense of any suit that might thereafter be brought on the policy and that the insured involved in the accident had refused to co-operate in the defense and the Supreme Court held that this was a good defense and in the course of the opinion it is said:

"We see no escape from the conclusion that the violation of the cooperation clause by the assured was a valid defense against the injured party's action. We say this with the knowledge that in some cases it may work a hardship on such party, who is ordinarily in no position to foree the assured to cooperate. Further, there is the possibility of collusion between the assured and the insurance company, to defeat the rights of the injured party. This possibility is balanced, of course, by an equal possibility of collusion between the assured and the injured party to defeat the rights of the insurance company. (*Coleman* v. *New Amsterdam Casualty Co.*, 247 N. Y. 271 [72 A. L. R. 1443, 160 N. E. 367]. Neither of these possibilities, however, is properly subject to consideration here in view of the terms of our statute. It is not a compulsory insurance law, requiring every automobile owner or those in a particular class to

secure insurance for the protection of the public generally. This latter type of statute, frequently found in the regulation of taxicabs and other carriers for hire, has usually been given a construction consonant with its purpose, as a result of which the injured party is permitted to recover against the insurance company regardless of the acts of the assured. (See *Kruger* v. *California Highway Indemnity Exch.*, 201 Cal. 672 [258 Pac. 602] ; *Boyle* v. *Manufacturers' Ins. Co.*, 96 N. J. L. 380 [115 Atl. 383] ; *Devlin* v. *New York Mutual Casualty Taxicab Ins. Co.*, 123 Misc. Rep. 784 [206 N. Y. Supp. 365] ; *Cohen* v. *Metropolitan Casualty Ins. Co.*, 233 App. Div. 340 [252 N. Y. Supp. 841] ; Marx, Compulsory Compensation Insurance, 25 Columb. L. Rev. 164.) Our statute regulates to a certain defined extent private policies of indemnity insurance. It deprives the insurance carrier of the defense of insolvency or bankruptcy of the assured, and it permits an action to be brought by the injured party on the policy after judgment against the assured, but the action is 'subject to its terms and limitations'. The object of the statute, similar to that of most of the other acts, was to reach a particular evil and not to make this private voluntary contract serve the purpose of compulsory insurance. (See *Coleman* v. *New Amsterdam Casualty Co., supra; Merchants Mutual Automobile Liability Ins. Co.* v. *Smart*, 267 U. S. 126 [69 L. Ed. 538, 45 Sup. Ct. Rep. 320] ; *Guerin* v. *Indemnity Ins. Co.*, 107 Conn. 649 [142 Atl. 268] ; Vance on Insurance, sec. 178, p. 682 et seq.; note, 25 Columb. L. Rev. 661.) The proviso that the action is subject to the terms and limitations of the policy, if it means anything, means that the right of action is not absolute, but that there are some defenses available to the company. Of course, no defense can be set up which defeats the statutory object, and of this type is a stipulation involving the financial responsibility of the assured, or a requirement of proof of insolvency or bankruptcy, or return of execution unsatisfied. (*Malmgren* v. *Southwestern Ins. Co.*, 201 Cal. 29 [255 Pac. 512].) We are also of the opinion, and we think most of the authorities are agreed, that the provision must be one reasonably necessary for the protection of the insurance company, and one which can readily be complied with by the assured; and that the violation of the condition by the assured cannot be a valid defense against

the injured party unless in the particular case it appears that the insurance company was substantially prejudiced thereby. (See *George* v. *Employers' Liability Assur. Corp.*, 219 Ala. 307 [72 A. L. R. 1438, 122 South. 175]; *Indemnity Ins. Co.* v. *Davis' Admr.*, 150 Va. 778 [143 S. E. 328]; Huddy, Encyclopedia of Automobile Law, 9th ed., vols. 13, 14, sec. 298, p. 378.)''

As to the last paragraph above quoted, we have considered what application, if any, it might have in the instant case, but in view of the matter under discussion in the case and the fact that the cases cited in support thereof all had to do with requirements after the accident occurred, and having in mind the familiar rule that expressions used in judicial opinions are always to be construed and limited by reference to the matters under consideration (*City of Pasadena* v. *Stimson*, 91 Cal. 238, at 250 [27 Pac. 604]), we are of the opinion that we are not required to determine the reasonableness, the ability of the insured to comply with it, or whether the insurance carrier was prejudiced by this condition under consideration—this condition as to the age of the driver being one going to the very essence of the policy and one for which the noncompliance with it would be a good defense. A policy of insurance is nothing more or less than a contract between two persons whereby the one, the insured, agrees to pay to the other, the insurance company, certain sums and the latter, the company, agrees, under certain conditions, to indemnify the former, the insured, against liability or against loss from liability.

In *Boole* v. *Union Marine Ins. Co.*, 52 Cal. App. 207, it is said, at page 209 [198 Pac. 416, 417]: ''Contracts of insurance are not different from other contracts. In the absence of the statutory provisions to the contrary, insurance companies have the same right as an individual to limit their liability, and to impose whatever conditions they please upon their obligations, not inconsistent with public policy.''

Again, in *Bassi* v. *Springfield Fire Ins. Co.*, 57 Cal. App. 707, it is said, at page 712 [208 Pac. 154, 156]: ''Policies of insurance are written contracts between the parties and are governed by the same rules which are applicable to contracts generally.''

From the foregoing we decide that if the insured had paid the judgment and brought an action to compel the in-

surance carrier to indemnify it, this breach of condition would have been a good defense. The next inquiry is, does the injured person stand in a different position and therefore may he maintain the suit successfully, although the insured could not have done so? There is nothing in the statute of 1919 above quoted enlarging the liability of insurance companies or purporting to give injured persons any additional rights except it does permit the injured person, after judgment against the negligent insured, to bring suit to force collection, and excludes the insolvency or bankruptcy of the insured as a defense.

In *Bryson* v. *International Indemnity Co.*, 88 Cal. App. 100 [262 Pac. 790], which was a case in which the claimant recovered a judgment against the insured and then brought suit against the insurer, the court said, at page 103:

"Since the policy provides for an action on such a judgment by the injured person against the company, under the circumstances stated, the evident intent is that such person shall have the rights which the insolvent insured would have had if he had paid the judgment."

And in the case of *Royal Indemnity Co.* v. *Morris*, 37 Fed. (2d) 90, which was a case decided by the Circuit Court of Appeals for the Ninth District, which includes California, and which was a case that arose under a policy of insurance issued in California and was decided under California law, the question involved was whether the refusal of the insured to allow the insurer to defend the suit brought against him by an injured party was a defense to the insurance company when the injured party, after recovering a judgment against the insured, brought suit against the insurance company. At page 92 the court said:

"Upon the assumption that Gomez, as we hold, was an 'insured', it must be conceded, under the facts stipulated, that he violated a material condition of the policy in declining to permit any defense to be made to the action brought against him by the appellee; and, as we understand, it is not controverted that as a result of the default he forfeited his right to claim indemnity under the policy. That being true, the question remains whether the appellee is in any better position. This question we expressly reserved in the Colthurst case, *supra,* but it now becomes necessary to decide it. Upon consideration we feel constrained to answer it in

the negative. Such is the weight of authority as appears from the citations in the Colthurst case. And see, also, *Coleman* v. *New Amsterdam Casualty Co.*, 247 N. Y. 271 [72 A. L. R. 1443, 160 N. E. 367, 369]. Speaking of a statute of New York to which the provision of this policy in favor of the injured person conforms, the Court of Appeal of New York in the Coleman case said: 'The statute was prompted by a definite mischief. . . . Before its enactment, the insolvency of the assured was equivalent in effect to a release of the surety. The policy was one of indemnity against loss suffered by the principal, and loss to him there was none if he was unable to pay. *The effect of the statute is to give to the injured claimant a cause of action against an insurer for the same relief that would be due to a solvent principal seeking indemnity and reimbursement after the judgment had been satisfied. The cause of action is no less but also it is no greater.* Assured and claimant must abide by the conditions of the contract.' We see no escape from the reasoning of this and the other cases referred to in which a similar conclusion is reached, and it is equally applicable to the California Statute. If the protection afforded by the statute is inadequate, that is a consideration for the Legislature and not for the courts.'' (Italics ours.)

*Metropolitan* v. *Colthurst*, 36 Fed. (2d) 559, is another case decided by the Circuit Court of Appeals for the Ninth District and arose in Solano County, California. In that case the plaintiff sued in Solano County for personal injuries. The insured turned over the papers to the insurance company. Shortly thereafter the attorney for the plaintiff notified the insurance company that he was dismissing the Solano County suit but starting a new one in Napa County. The insured was served with the papers in the Napa County case but never turned these over to the insurance company. In the Napa County case the insured allowed his default to be taken with the result that a judgment therein became final. Plaintiff then sued the insurance company under the precise statute involved in the case at bar and also alleged that the insured was at all times insolvent. The Circuit Court of Appeals for the Ninth District (that is the one including California) held that the insurance company was not liable to the plaintiff because of the failure of the insured to comply with the terms of the policy and tender to

the insurance company the papers in the Napa County case. The decision, however, was partly based upon the proposition that, knowing of the interest of the insurance company in the case, it became plaintiff's duty to have furnished the company with the complaint and summons in the Napa County case. On *rehearing,* however, the court reversed itself on this latter proposition, thereby exempting the insurance company from liability and placing its decision squarely on the ground that the insured had not lived up to the provisions of the policy.

The respondent cites *Finkelberg* v. *Continental Casualty Co.,* 126 Wash. 543 [219 Pac. 12], and *Hynding* v. *Home Acc. Ins. Co.,* as decided by the District Court of Appeal. The Supreme Court of California granted a hearing in the Hynding case, and in its opinion refused to adopt the reasoning in these cases as a whole. It did, however, approve the cases of *Royal Indemnity Co.* v. *Morris* and *Metropolitan* v. *Colthurst, supra,* and other cases of similar import. In fairness to the respondent it must be said that the decision of the Supreme Court in *Hynding* v. *Home Accident Insurance Co., supra,* very materially altered the holding in the cases relied on most strongly by appellant.

We having reached the conclusion in this case that the provision in the policy which was violated by the insured was one which would constitute a good defense in any suit which the insured might have brought to compel the insurance carrier to indemnify him, we also decide that the injured person has the same right against the insurance carrier as the insured would have, and that a defense good against the insured is good against the injured claimant. In other words, to put it in plain language, if the so-called insured is not in fact insured by the policy as in this case, at the very time the accident occurred the injured person cannot recover against the insurance carrier.

Respondent also seeks to uphold this judgment on the theory that because the insurance company defended the first cause of action, therefore it assumed all liability for any judgment which might be recovered therein and is now liable to the plaintiff, regardless of any defense it might have under the terms of the policy. This contention cannot be upheld. There are some authorities holding that a defense of a suit against an insured by an insurance company is

deemed a waiver of certain rights by the insurance company, where the company so defends without any reservation of rights. There are cases to the contrary, but it is not necessary for us to attempt to distinguish the cases or decide whether this case falls in one class or the other for it was stipulated in this case, and so found by the court, that before the beginning of the former trial, the insured and the appellant entered into a written nonwaiver agreement heretofore mentioned in this opinion. The authorities seem to be almost unanimous that an indemnity company under such circumstances waives none of its rights by reason of having defended the original suit.

In *Bryson* v. *International Indemnity Co., supra,* at page 103, in discussing the statute under which the action was brought (Stats. 1919, p. 776), it is said: "The statute cited requires a provision in such a policy that, in the event of the insolvency of the insured and the recovery of judgment for damages against him by an injured person, 'an action may be brought against the company, on the policy and subject to its terms and limitations, by such injured person, . . . to recover on said judgment'. Had the insured paid the amount of the judgment it would have been conclusive in his favor against the company on every issue properly tried in the action against him, he having notified the company of the action and requested it to defend the same. (Civ. Code, sec. 2778, subd. 5.) Since the policy provides for an action on such a judgment by the injured person against the company, under the circumstances stated, the evident intent is that such person shall have the rights which the insolvent insured would have had if he had paid the judgment. Such a judgment is conclusive only in respect to the matters adjudged. No one would contend that it precludes the company from defending on the ground that it did not issue the alleged policy or that the policy issued by it does not cover the motor vehicle which caused the injury. It seems equally clear that the company may show in defense that its policy does not indemnify against liability for damage to persons of the class to which the injured person belongs. In other words, before the company can be held liable as an indemnitor it must be proved that it is an indemnitor. 'While one who is required to protect another from liability is bound by the result of litigation to which such

other is a party, provided the former had notice of such litigation, and an opportunity to control its proceedings, a judgment against a party indemnified is conclusive in a suit against the indemnitor only as to the facts thereby established. The estoppel created by the first judgment cannot be extended beyond the issues necessarily determined by it.' "

In *Sargent Mfg. Co.* v. *Travelers Ins. Co.*, a Michigan case reported in 165 Mich. 87 [34 L. R. A. (N. S.) 491, 130 N. W. 211], the author's note in connection with that case says: "It may be laid down as a general rule of law, gathered from the above decision and the authorities reviewed herein that an indemnity insurer will not be estopped to set up the defense that the insured's loss was not covered by the contract of indemnity, by the fact that an insurer participated in the action against the insured, if, at the same time, same gives notice to the insured that it does not waive the benefit of such defense."

And in *Coolidge* v. *Standard Acc. Ins. Co., supra,* on the point of waiver, it is said: "Finally it is asserted that the insurance company waived the failure of the assured to notify it of the occurrence of the accident within a reasonable time, and waived the exemption from liability on account of the presence of the trailer which was attached to the automobile at the time of the accident, by its effort to procure an adjustment of the claim for damages, and by its assistance in the defense of the original action for damages. This contention that a waiver resulted from the conduct of the insurance company as above related is without merit. A waiver is a voluntary relinquishment of a known right. (*First Nat. Bank of Los Angeles* v. *Maxwell,* 123 Cal. 360 [69 Am. St. Rep. 64, 55 Pac. 980]; *Jones* v. *Maria,* 48 Cal. App. 171 [191 Pac. 943]; *Aronson* v. *Frankfort etc. Co.,* 9 Cal. App. 473 [99 Pac. 537]; 8 Words and Phrases (1st ser.), 7375; 5 Cooley's Briefs on Insurance, 3939.) It is true that a waiver may be either express or implied. Conduct on the part of the insurance company which will warrant the inference that it intended to waive a provision of the policy, and which deceived the insured so as to prevent his fulfillment of the terms of the contract may amount to a waiver. (*Francis* v. *Iowa Nat. Fire Ins. Co.,* 112 Cal. App. 565 [297 Pac. 122].) In the present case, however,

the conduct of the insurance company may not be construed to constitute a waiver. The intention of the company to reserve its exemption from liability on account of the trailer which was attached to the automobile at the time of the accident, and to its right to notice of the accident as provided by the terms of the policy may not be doubted. The plaintiff's signature to a written reservation of these rights was demanded by the insurance company as a prerequisite to its consent to aid in behalf of the plaintiff in an effort to adjust the claimed damages and as a condition upon which the company agreed to assist in the defense of the original action. The letter accompanying this requested reservation of rights also informed the plaintiff that the insurance company insisted upon its exemption from liability because of the plaintiff's failure to furnish notice of the accident and on account of the attached trailer. The conduct of the insurance company renders it indisputable that it did not intend to waive these exemptions.'' (See, also, *Emerson* v. *Western Automobile Indemnity Assn.*, 105 Kan. 242 [182 Pac. 647]; *Eckert* v. *Joice*, 152 Minn. 440 [189 N. W. 125]; *Hartigan* v. *Casualty Co.*, 97 Misc. Rep. 464 [161 N. Y. Supp. 145]; *Neil Bros. Grain Co.* v. *Hartford Fire Ins. Co.*, 1 Fed. (2d) 904.)

In view of the conduct of the appellant in this case in obtaining the waiver agreement, surely under the authorities cited it cannot be held that there was any waiver in the case. The cases cited by respondent on this branch of the case have been considered by us and have been found not to be in point. In fact the case of *Coolidge* v. *Standard Acc. Ins. Co.*, *supra,* would seem to be conclusive of the matter.

It is our conclusion that on the findings made judgment should have been entered for the defendant. If we are right in this conclusion it follows from the undisputed facts in this case and the law applicable thereto that respondent cannot recover in this action.

It is therefore ordered that the judgment be reversed and the court is directed to enter a judgment for the appellant.

Barnard, P. J., and Marks, J., concurred.