**EXPORT LEAF TOBACCO COMPANY, Plaintiff,**

**v.**

**Park BERNARD and W. W. Bernard, partners trading as Burley Bee Warehouse, Defendants,**

**and**

**The American Insurance Company of Newark, New Jersey, Third Party Defendant.**

**Civ. No. 559.**

United States District Court
W. D. Virginia,
Abingdon Division.

Feb. 15, 1958.

Penn, Stuart & Phillips, Abingdon, Va., for Export Leaf Tobacco Co.

William H. Woodward, Bristol, Va., for defendants Park Bernard and W. W. Bernard and others.

Robert B. Davis, Bristol, Va., and Stuart B. Campbell, Wytheville, Va., for third party defendant American Ins. Co.

BARKSDALE, District Judge.

This case follows, is closely related to, and might be called an outgrowth of, the case of Export Leaf Tobacco Company v. American Insurance Company of Newark, New Jersey, Civil No. 523, in which I filed findings of fact and conclusions of law, and rendered a final judgment, on January 24, 1957, D.C., 148 F.Supp. 303. That case is now pending in the Court of Appeals for this Circuit. This case was originally instituted by Export Leaf Tobacco Company against Park Bernard and W. W.

Bernard, partners trading as Burley Bee Warehouse. After it had been fully submitted, it appeared to me that there were certain facts in this case which did not appear in the former case and that the American Insurance Company of Newark, New Jersey, defendant in the former case, should be a party to this action, so, at my suggestion, the original defendants brought in the American Insurance Company of Newark, New Jersey, as third party defendant. This case now having been tried upon the facts by the court without the intervention of a jury, the court now finds the facts and states separately its conclusions of law thereon, and directs the entry of the appropriate judgment, as follows:

### Findings of Fact.

Plaintiff, Export Leaf Tobacco Company, is a Delaware corporation, defendant Park Bernard is a resident of Virginia, and third party defendant, the American Insurance Company, is a New Jersey corporation, and the amount in controversy exceeds the jurisdictional amount. Plaintiff is a wholly owned subsidiary of Brown & Williamson Tobacco Corporation, and in all its activities here pertinent, plaintiff acted as a facility of Brown & Williamson Tobacco Corporation. Plaintiff instituted this action in behalf of Brown & Williamson Tobacco Corporation, Aetna Insurance Company, American Equitable Assurance Company, Centennial Insurance Company, Milwaukee Insurance Company, Hanover Fire Insurance Company, Travelers Fire Insurance Company, the Home Insurance Company, and Standard Marine Insurance Company (hereinafter called "the Eight Carriers"), as their interests may appear, and on its own behalf as its interests may appear.

On or after December 12, 1955, Burley Bee Warehouse, operated by defendant Park Bernard and his father, now deceased, as partners, was engaged in the business of conducting a tobacco warehouse for auction sales of leaf tobacco in the town of Abingdon, Virginia.

As such warehouse, it was subject to the provisions of Section 61–132 of the Code of Virginia, which statute, so far as pertinent, is as follows:

"* * * And the proprietors of every such warehouse shall keep, free of charge to the planter and owner of tobacco, an open policy of insurance upon their respective warehouses, sufficient to cover every loss by fire or water which any person having tobacco stored therein may sustain; and for a failure to do so, they shall be liable to the owners thereof for any damage or loss they may sustain by reason of any partial or total destruction of the tobacco by fire or water."

On November 28, 1955, defendant, American Insurance Company, issued to Burley Bee Warehouse, named insured, its policy providing coverage against loss by fire of "Tobacco in Sales Warehouses (Auction Form)", "Form 61V—Virginia," which policy was in full force and effect at the time of the destruction of said warehouse by fire. The pertinent provision of the policy is as follows:

"On leaf, loose, scrap and stem tobacco, the property of others while in the custody of the insured for auction * * *, while on the premises of the above described tobacco sales warehouse, or while located within 100 feet thereof, whether in the open or in vehicles."

On December 12, 1955, at approximately 6:45 p. m., Burley Bee Warehouse was destroyed by fire. On that day all the tobacco on the warehouse floor for sale, had been sold. Stored in said warehouse at the time of the fire, was 42,140 pounds of leaf tobacco, which had been purchased by plaintiff for the account of Brown & Williamson, all of which was destroyed in said fire. Of this total, 17,288 pounds of the net value of $10,709.77 were purchased on December 9, 1955, and the balance, 24,852 pounds of the net value of $15,296.07 were purchased on December 12, 1955, the day of the fire. Prior to the fire, all of the

said tobacco, after having been purchased by the plaintiff, had been placed in burlap sheets by a contractor engaged by plaintiff, and moved by him from the points of sale to another location in said warehouse preparatory to moving it out of the warehouse, but had not yet been removed from the interior of said warehouse. Out of the quantity of tobacco purchased on December 9, 1955, prior to the fire, plaintiff's contractor had removed 3,060 pounds thereof from said warehouse, leaving on the warehouse floor from the amount purchased on December 9, 1955, the net amount of 17,268 pounds.

On October 1, 1955, the Eight Carriers and defendant, American Insurance Company, issued a joint floater policy to plaintiff and also for the benefit of Brown & Williamson, covering the leaf tobacco of the insured, located anywhere within the United States or Canada with certain exceptions not here pertinent. This policy was in full force and effect at the time of the fire and covered the tobacco of plaintiff which was destroyed. This policy provided that any loss thereunder should be prorated among the Eight Carriers and defendant. After the fire, and prior to the institution of this action on January 14, 1956, the Eight Carriers and defendant advanced to plaintiff or Brown & Williamson the aggregate of $26,105.84 covering the value of the tobacco lost less salvage, each company advancing its prorate amount, as set out in a stipulation filed herein. Of this sum, the American Insurance Company paid $2,610.58, which leaves a balance of $23,495.26, the amount sued for.

These payments were made upon a loan agreement executed by plaintiff, the provisions of which, here pertinent, are as follows:

"As a loan, without interest, repayable only in the event and to the extent of any net recovery the undersigned may make from any person, persons, corporation or corporations, or other parties, causing or liable for the loss or damage to the property described below, or from any insurance effected on such property * * *

"The undersigned hereby agrees to promptly present claim, and, if necessary, to commence, enter into and prosecute suit against such person or persons, corporation or corporations, or other parties, through whose negligence or other fault the aforesaid loss was caused, or who may otherwise be responsible therefor, with all due diligence, in his, its, or their own name. * * * *"

At the time of the fire, at 6:45 p. m., December 12, 1955, all the tobacco on the sales floor of Burley Bee Warehouse had been sold. All the tobacco here in controversy had been sold at auction and knocked out by the auctioneer to the plaintiff. Either on December 9 or December 12, 1955, plaintiff, through its contractor, had taken all of this tobacco into its physical possession, removed it from the baskets in which it had been sold, wrapped it in burlap sheets and removed it from the sales floor preparatory to removing it entirely from the warehouse. No intention to reject the sale of any of it had been indicated by either the buyer or the seller.

Prior to September 1935, proprietors of looseleaf auction warehouses in Virginia purchased fire insurance on an ordinary "business contents" basis. Such insurance covered all tobacco in the warehouses, whether owned by growers, buyers or the warehouse itself. Throughout each selling season, the amount of coverage varied from day to day, as the contents of the warehouse varied. Limits of coverage were constantly being increased or decreased as circumstances required. The inconvenience of seeking to provide the exact amount of specific coverage required at a given time, the risk of inadvertently doing business with inadequate coverage, as well as the expense of from time to time paying for excessive coverage, led to the development in the year 1935 of Auction Form 61V, Virginia, for looseleaf sales warehouses, and its ap-

proval by the insurance department of the State Corporation Commission. This Form 61V was worked out through the cooperation of representatives of insurance companies, the tobacco industry and the Virginia Insurance Rating Bureau. They sought not to change the interests to be insured, but to devise a simple formula for providing the exact limits of coverage required daily and calculating the proper premiums. Form 61V provides:

> "The premium named in this policy is provisional only. The actual premium shall be computed at the rate of —— per each one hundred dollars of gross sales and resales."

Consequently, the use of this form provides coverage for the exact amount of tobacco insured, with premiums based on the exact amount of coverage.

It would hardly seem necessary to resort to the maxim, *Ignorantia legis neminem excusat,* to charge those who formulated Form 61V with knowledge of Virginia Code Section 61–132, which has been on our statute books for generations and requires warehouse proprietors to carry insurance covering every loss by fire "which any person having tobacco stored therein may sustain". The "business contents" insurance which warehousemen had previously been carrying afforded such coverage, and it was not the intention of those formulating Form 61V to reduce the limits of coverage, their purpose being to formulate a plan to provide coverage on the exact amount of tobacco in the warehouse from day to day and a method for calculating appropriate premiums thereon.

Neither defendant Bernard nor Elliot, agent of the American Insurance Company, were aware of Code Section 61–132, nor any law requiring warehousemen to carry insurance on the tobacco in their warehouses. Elliot did know that prior to the adoption of Form 61V, warehouse proprietors customarily carried business contents insurance. Since the adoption of Form 61V, he has used it in all warehouse insurance contracts, and knows that all the Burley looseleaf warehouses in Virginia carry insurance using Form 61V. Elliot considers it mandatory that Form 61V be used in warehouse insurance. I have no doubt that Form 61V is mandatory in that no insurance agent is permitted to amend or vary Form 61V, or to charge anything but the rate prescribed by the State Corporation Commission where it is used. However, I have no doubt that it is perfectly possible for a warehouse proprietor to obtain insurance other than on Form 61V insuring whatever risks he wishes insured.

Bernard has been purchasing his insurance from Elliot, agent, since 1936, always on Virginia Form 61V. In procuring his insurance from Elliot, Bernard requested that Elliot give him adequate coverage on the tobacco, saying that he wanted all the coverage he could buy, knowing that Elliot was familiar with his operation. Elliot assured Bernard that he had adequate coverage and was buying proper insurance for his operation. Elliot knew that Bernard was relying on him to sell him the most adequate and fullest protection possible for his tobacco sales warehouse business.

Both Bernard and Elliot knew that it was customary for tobacco companies to carry insurance on tobacco which they purchased. Bernard had no idea when the insurance which he carried on the tobacco in his warehouse ceased, and the coverage of the purchaser of the tobacco began. Elliot thought that the coverage of the warehousemen's insurance terminated and the buyers' insurance coverage began "with the fall of the hammer" when the auctioneer knocked out each pile of tobacco to the purchaser. However, both Bernard and Elliot believed and understood that the insurance which Elliot had provided for Bernard provided all the coverage which Bernard needed to have for his warehouse operation.

When Form 61V was worked out for the Burley Tobacco Warehouse industry, there was a difference in the form adopted in Kentucky and the form adopted in Virginia. The Kentucky form contains this provision:

"In consideration of the rate and this policy covering seasonal tobacco in sales warehouses, this policy shall cover only sale and resale tobacco as above, and (1) there shall be no liability on the part of this company for tobacco sold at any auction (except warehousemen's 'leaf account' tobacco held for resale) on and after 6:00 o'clock P. M. of the day following such auction sale, and (2) this policy shall cease and be null and void at 6:00 o'clock P. M. of the day following the last regular auction sale of the present season."

The Virginia form contains the following:

"*Suspension of Liability.* It is understood and agreed that there shall be no liability on the part of this Company for loss from any of the perils insured against between 8:00 o'clock P. M. on the Official Closing Date of regular Auction Season, and the beginning of placing of tobacco on the floors for the next regular Auction; during such period, the reports mentioned in Record and Reporting Clause are not required."

The form 61V, a part of American Insurance Company's policy here in controversy, contains the following:

"*Contributing Insurance Clause*— Permission granted for other insurance written upon the same plan, terms, conditions and provisions as those contained in this form; i. e., insurance written upon this premium adjustment form. This policy shall contribute, in accordance with its conditions, only with other insurance as herein defined.

"*Specific Insurance Clause*—Insurance other than described in the Contributing Insurance Clause shall be known as Specific Insurance.

"*Excess Clause*—This policy does not attach to or become insurance against any peril upon property herein described, which at the time of any loss is insured as defined by the Specific Insurance Clause, until the liability of such specific insurance has been exhausted, and then shall cover only such loss as may exceed the amount due from such specific insurance (whether collectible or not) after application of any contribution, co-insurance, average or distribution or other clauses contained in policies of such specific insurance affecting the amount collectible thereunder, not, however, exceeding the limits as set forth herein."

Conclusions of Law.

Upon the facts found, my conclusions of law are as follows:

I conclude that this court has jurisdiction of this action and the parties hereto.

I conclude that, at all times here pertinent, proprietors of Burley Bee Warehouse were subject to the provisions of Section 61–132 of the Code of Virginia.

As to the question of whether or not the policy of fire insurance issued on November 28, 1955, by the American Insurance Company, third party defendant, to the proprietors of Burley Bee Warehouse, original defendants, covered the loss of plaintiff's tobacco resulting from the fire which took place on December 12, 1955, I find that the record in this case discloses facts which did not appear in the record in the previous case. In this case it appears that, prior to the adoption of Form 61V, warehouse proprietors carried insurance covering the "business contents" of their warehouses, which included all the tobacco in the warehouses which was there in connection with the operation of the business, whether it was there "for auction" or left there by the purchaser after auc-

tion until he could move it out. Form 61V was formulated jointly by representatives of the insurance companies, the warehouse industries and the state regulatory body. Their purpose was not to diminish the coverage provided by a "business contents" policy, but to devise a scheme to provide the exact coverage needed and a workable plan for calculating fair premiums on this coverage. In this case, it appears that Bernard requested and Elliot, Agent of the American Insurance Company, assured him that he got, all the coverage required for the operation of his business.

Under these circumstances, it seems to me that the American Insurance Company is liable on its policy, not by reason of estoppel, not as a result of reformation of its insurance contract, but by reason of the proper construction of the critical language of the insurance contract which should be given it in the light of the fuller state of facts developed in this case.

In the previous case, I held that the tobacco here in controversy was not "for auction", since as to it the auction was over. I would adhere to this holding on the state of facts presented in the previous case. However, on the fuller state of facts here presented, I am of opinion as to the phrase "for auction" that the parties to the contract gave it a broader meaning than I gave it in the previous case. The statute—Section 61–132, required Bernard to carry insurance to cover "any person having tobacco stored therein". I would construe this to mean "stored therein" in connection with his operation of a sales warehouse. Form 61V was designed to provide him with such coverage as he was obliged to maintain. Bernard and Elliot understood that his operation was fully covered. Although they did not have actual knowledge of Section 61–132, they were charged with notice of it, and it must be assumed that the company and the insured understood "tobacco for auction" to mean all the tobacco in the warehouse in connection with the auction. I therefore construe "for auction" to include the tobacco here in controversy. Therefore, I conclude that the policy of insurance issued by the American Insurance Company, third party defendant, to the proprietors of Burley Bee Warehouse, original defendants, covered the loss of plaintiff's tobacco by fire on December 12, 1955.

I conclude that the clauses entitled "Contributing Insurance Clause", "Specific Insurance Clause", and "Excess Clause", in Form 61V, made a part of the insurance policy issued by the American Insurance Company to the proprietors of Burley Bee Warehouse, refer only to other insurance which the proprietors of Burley Bee Warehouse might have procured for their warehouse operation and have no application to the insurance carried by plaintiff for its own protection on its own tobacco.

I further conclude that the insurance policy issued by the American Insurance Company to the proprietors of Burley Bee Warehouse, was primary insurance by reason of the fact that it was insurance required by Section 61–132 of the Code of Virginia.

Therefore, I conclude that plaintiff, Export Leaf Tobacco Company, is entitled to a judgment against the third party defendant, the American Insurance Company of Newark, New Jersey, in the sum of $23,495.26, the amount sued for, with interest thereon from January 14, 1956, until paid, together with costs.

I conclude that plaintiff is not entitled to recover anything of defendant, Park Bernard, surviving partner of the partnership which traded as Burley Bee Warehouse. I conclude that said Park Bernard is not entitled to recover attorney's fees, but that he is entitled to recover his taxable costs against said third party defendant, the American Insurance Company of Newark, New Jersey.

An order will be entered accordingly.